[No. D011150. Fourth Dist., Div. One. Jan. 30, 1991.]

In re COREY A., a Minor.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES,
Petitioner and Respondent, v.
SHERRY A., Objector and Appellant.

**[Opinion certified for partial publication.¹]**

---

[1]Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.

**COUNSEL**

Scott A. Wahrenbrock, under appointment by the Court of Appeal, for Objector and Appellant.

Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Gael B. Strack and Patricia Davis, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**WORK, J.**—Sherry A. appeals the declaration of dependency of her one-year-old son, Corey, and his removal from her physical custody. She contends her due process rights were violated when the trial court admitted the social study and its attached reports at the dispositional hearing, without the authors being available for cross-examination. She argues if Welfare and Institutions Code[2] section 358 is interpreted not to require witnesses be available for cross-examination when such reports are admitted, it violates due process. She further contends there was insufficient evidence to support the trial court's findings and the court erred in failing to consider reasonable alternatives to complete removal of custody. We affirm the judgment, concluding the preparer of a social study need not testify to establish a foundation for admission of that report in evidence at a dispositional hearing, and that a parent's constitutional right to confront the preparer of the report is satisfied so long as that person is available to the parent upon request or by service of process. We reject Sherry's contention the department of social service's (DSS) failure to produce the social worker who compiled the social study, absent any request that it do so, denied her due process.

I

FACTUAL AND PROCEDURAL BACKGROUND

Corey was born on August 28, 1988, with club feet and a congenital heart murmur. Doctors suspected fetal alcohol syndrome because of his low birth weight, thin lips, refusal to feed and the results of a neurologic exam shortly after birth. Sherry denied excessive alcohol use, but initially agreed to in-home support services and parenting skills assistance. Shortly thereafter she refused the services and no assistance was given.

On November 16, 1988, the DSS received a referral from Corey's pediatrician who was concerned Sherry had consistently failed to bring Corey for appointments with a pediatric cardiologist, which were necessary due to a defective ventricle in his heart.[3]

On August 28, 1989, when Sherry brought Corey to the hospital for corrective foot surgery, she was observed sitting in the corner holding Corey and crying that no one would take him from her, and threatening to

---

[2] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

[3] According to the social study dated September 26, 1989, when Sherry eventually took care of Corey's medical problems. At the time of the report, he was stable and under the care of a cardiologist and orthopedist.

take him from the hospital. They notified hospital psychiatrist, Dr. Mark Magulac, who came to speak with her. He met with her three times, for a total of about four hours. Sherry told Dr. Magulac she had been hearing approximately six different voices from snakes, spiders and individuals, and her life was a living hell. She said the voices made derogatory remarks about her, especially when she was in the shower. Sherry claimed she had lost her privacy and she was afraid to go out into public places. She said the voices gave her commands, once telling her to go outside and wait for a truck, which she did. Other times she was told to go into traffic and tap on a car or get into the passenger side of a stopped car. These commands she had resisted. At one point during a session with Dr. Magulac, Sherry vehemently said "cut my throat," but she would not explain what prompted the outburst. Sherry claimed she had experienced auditory and visual hallucinations for two or three years. She refused Dr. Magulac's suggestion that medication could help alleviate these symptoms, stating she wanted to get even with the people who made this happen to her.

The hospital placed a hold on Corey, precluding Sherry from leaving with him. The following day, Kathy Przekopp, a social worker from child protective services, observed Corey was very pale and tended to avoid eye contact, but he was large and not undernourished. Sherry refused to talk to the social worker except to scream that no one would take her child.

On September 1, 1989, a dependent child petition (§ 300, subd. (b)), alleged Corey had suffered and there was a substantial risk he would suffer serious physical harm or illness because of Sherry's mental disorder. The petition referred to her "hallucinations, delusions and bizarre ideas consistent with schizophrenia" which made her incapable of providing regular care for Corey.

At the jurisdictional hearing on September 13, 1989, the court heard testimony from Dr. Magulac and Przekopp, and received into evidence reports from each of them, dated August 30 and September 1 respectively. Przekopp testified her concern for Corey's safety stemmed from the hospital referral, but additionally, during her investigation she spoke with Sherry's sister, Corey's pediatrician and his orthopedist and each of them expressed concerns over Sherry's ability to care for Corey.

Dr. Magulac testified Sherry's condition creates unacceptable risks for Corey. He explained Sherry might obey a command from the voices which could endanger Corey; the agitation she demonstrated while in the hospital may lead to impulsive actions that might put Corey at risk; and he is at risk of poor development from lack of stimulation by his mother. Dr. Magulac explained there was already evidence of Corey's abnormally slow

development. He was also concerned about a scab on Corey's nose, not because it was a serious injury, but because Sherry could offer no explanation as to how it happened. Dr. Magulac's report suggested Corey would be a good candidate for an infant stimulation program and recommended Corey be placed in the court's protection so an assessment of Sherry's social environment could be made and she could be started on medication for her schizophrenic illness. The court found the petition's allegations true by clear and convincing evidence and ordered Sherry to undergo psychiatric evaluation.

On November 6, at the contested dispositional hearing, the court received Przekopp's social study into evidence, over the mother's hearsay objection. Przekopp was not present at this hearing. Although Sherry's counsel noted the social worker's absence, no objection was made that her absence denied the mother's right to confront witnesses, and he did not request the court for a delay to obtain her presence. (Cal. Rules of Court,[4] rule 1412(i)(2).) Another social worker who had only recently taken over the case testified. Although she had only read the social study and had not fully evaluated the situation herself, she believed Corey should remain in foster care with the reunification plan continuing.

According to the social study, Sherry denied mental problems. This was consistent with Dr. Magulac's report stating Sherry had "much more insight into the fact that she was at risk for losing custody of her son than she did into her delusional world." The social study also indicated Sherry's thyroid disorder was longstanding and she had repeatedly been urged to get medical treatment, but had refused to do so. Although for a long period Sherry had not adequately cared for Corey's heart condition, at the time of the social study, the condition was stable and the primary concern was with Sherry's judgment. The social study found "[Sherry's] schizophrenia and auditory and visual hallucinations impair her ability to provide effective and protective care for her child . . . .

". . . . . . . . . . . . . . . . . . .

"The situation is further complicated by the grave delays seen in the baby, Corey." The social study noted that although Sherry wanted to keep Corey with her, she remained uncooperative and had failed to comply with court orders for medical and psychiatric evaluations.

The social study incorporated by reference Dr. Magulac's report of August 30 and a developmental evaluation of Corey by Kirstin Gist. Gist

---

[4] All rule references are to the California Rules of Court.

found Corey exhibited a "very depressed affect, with deficits in all aspects of social and linguistic development . . . ." She suggested Corey's abnormal behavior quite possibly resulted from a "lack of emotional availability, appropriate eye contact, and language input from his natural mother." Her report stated, "Corey appears to be quite compromised by the lack of appropriate parenting, although the exact etiology and prognosis cannot be assessed until he has spent six months or so with a new trained caretaker." Gist recommended long-term foster care and an infant education program for Corey as well as intensive psychiatric treatment for Sherry before Corey should be returned to her.

Dr. Schmitt, a psychiatrist, testified that when he examined Sherry on October 4, she was not schizophrenic and had no active symptoms of hallucinations or delusions. In his opinion, she was depressed and suffering from hypothyroidism and until Sherry received treatment there was no way of knowing to what extent her problems were caused by hypothyroidism. He had read the social study and the accompanying reports. He agreed Sherry had been psychotic when Dr. Magulac examined her, but in his opinion the psychosis was likely related to the stress and sleepless nights in the hospital with Corey and it was not caused by schizophrenia. Dr. Magulac's report itself stated lack of sleep had precipitated Sherry's psychotic episode, but it went on to note Sherry's long-standing history of schizophrenic symptoms.

Dr. Schmitt described Corey as a slow, lethargic child with delayed mental development. In his opinion, there is a "very good possibility" this was caused by a long-term lack of attention by a maternal nurturing figure. He recommended Corey be removed from Sherry's custody until she receives aggressive treatment for hypothyroidism, proves she has adequate residence and income, and has ongoing contact with a parent/child program. He also stated Corey would need special care to have any hope of overcoming his developmental handicap.

Declaring Corey a dependent child, the court removed him from Sherry's custody pursuant to section 361, subdivision (b)(1) and Civil Code section 4600, and established a reunification plan. Biweekly supervised visitation was to continue, with overnight visits at the social worker's discretion.

## II

A section 300 dependency hearing is bifurcated to address two distinct issues. First, at the jurisdictional hearing, the court determines

whether the child falls within any of the categories set forth in section 300[5] If so, the court may declare the minor a dependent child of the court. (*In re Christina T.* (1986) 184 Cal.App.3d 630, 638 [229 Cal.Rptr. 247].) Then, at the dispositional hearing, the court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest. (*In re Tasman B.* (1989) 210 Cal.App.3d 927, 931 [258 Cal.Rptr. 716].) ■ The juvenile court has broad discretion to decide what means will best serve the child's interest and to fashion a dispositional order accordingly. (*In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104 [254 Cal.Rptr. 364].) Its determination will not be reversed absent a clear abuse of that discretion. (*In re Eric B.* (1987) 189 Cal.App.3d 996, 1005 [234 Cal.Rptr. 22].)

*Due Process*

■ An express constitutional right of confrontation is limited to criminal prosecutions. (U.S. Const. 6th Amend.; Cal. Const., art. I, § 15.) This right has been extended, however, to civil matters and by statute to juvenile dependency hearings, although not all of the formalities necessary in a criminal trial are applicable or required. (§ 311; *In re Kerry O.* (1989) 210 Cal.App.3d 326, 333-334 [258 Cal.Rptr. 448].) ■ Unlike criminal trials, the primary purpose of dependency hearings is to protect the child, not prosecute the parents. (*In re Kerry O., supra,* 210 Cal.App.3d at p. 333; *In re Mary S.* (1986) 186 Cal.App.3d 414, 418 [230 Cal.Rptr. 726].)

■ Under section 355, applicable to jurisdictional hearings,[6] the dependency finding must be based upon evidence "legally admissible in the trial of civil cases . . . ." Thus, a social study is admissible at a jurisdictional hearing only if the preparer is made available for cross-examination. (Rule 1450; *In re Jose M., supra,* 206 Cal.App.3d at p. 1105.) Section 355 permits a social study and attached reports to be admitted where only the preparer of the report itself testified, and not the authors of the attached reports. (*In re Malinda S.* (1990) 51 Cal.3d 368 [272 Cal.Rptr. 787, 795 P.2d 1244].) *In re Malinda S.* focused on section 355 which pertains specifically to jurisdictional hearings. We have been cited to no judicial interpretation of section

---

[5] In this case, the petition alleged and the court found Corey fell within section 300, subdivision (b) which provides in part: "The minor has suffered, or there is a substantial risk that the minor will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the minor or the willful or negligent failure of the minor's parent or guardian to . . . provide the minor with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the minor due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

[6] The word "jurisdictional" was added to the statute in a 1987 amendment, thereby clarifying the specific type of hearing to which section 355 applies.

358, subdivision (b), applicable to dispositional hearings, a provision which does not contain the limiting language of section 355. ▮ Section 358, subdivision (b) states in part, without qualification, "the court shall receive in evidence the social study of the minor made by the probation officer, any study or evaluation made by a child advocate appointed by the court, and such other relevant and material evidence as may be offered."

▮ Where statutory language is clear, there is no room for interpretation. (*Walker* v. *Superior Court* (1988) 47 Cal.3d 112, 121[].) ▮ The statutes clearly indicate legislative intent to treat the two phases of dependency proceedings differently. Under section 355, more stringent evidentiary requirements must be met at the jurisdictional hearing where the court initially intervenes and obtains jurisdiction over the child. At the subsequent dispositional phase, any relevant evidence including hearsay shall be admitted pursuant to section 358, subdivision (b) to help the court determine the child's best interests. Considering the express statutory language of sections 355 and 358, subdivision (b), and the California Supreme Court's broad interpretation of section 355 in *In re Malinda S.*, we see no reason to construe section 358, subdivision (b) to require the preparer to testify as a prerequisite to admitting the report.

▮ However, although not specifically raising the issue by objection at the dispositional hearing, Sherry now claims her constitutional right to confront the social worker who prepared the report was denied because that person was not presented by the petitioning DSS at the hearing. This contention misconstrues the scope of that right.[7] Sherry had the ability to, but made no effort to, subpoena the original social worker, nor did she ask the court or DSS to insure her presence. Moreover, although county counsel represented the social study preparer was merely "in the field," Sherry's counsel did not ask for a delay to secure her presence. Indeed, Sherry never objected to the admission of the social study on this ground. Now, however, without supporting documentation, Sherry argues she was entitled to rely on the customary practice in which the preparing social worker appears at dispositional hearings without any defense request. Because she relied on this custom, her failure to insure the social worker's presence is understandable, and in any event, the burden or producing that witness should be on county counsel. Finally, she argues, because the witness was not present, that social worker was "unavailable" so that Sherry could not avail herself of the right of confrontation.

Accepting Sherry's representation she could reasonably rely on the local juvenile court practice to expect the preparing social worker to be present at

---

[7] See related discussion in *In re Malinda S.*, *supra*, 51 Cal.3d at page 383, holding it does not violate due process to place the burden of securing the attendance of witnesses, whose statements are in a social study, on the parent.

the dispositional hearing, the failure of county counsel to insure that presence here was not a denial of any constitutional due process right. As we have stated above, there is no legal requirement that the DSS lay any foundation through the social study preparer's admissibility of the report, and no testimony from that person is necessary to sustain the DSS's burden of proof. While we agree due process insures a parent the right to cross-examine any testifying witness, and the right to examine persons whose evidence is compiled within a social study received in evidence, there is no showing that this right was not available to Sherry. Assuming the accepted practice is as Sherry describes, the court would be required to accommodate her reasonable request to delay its decision until the social study preparer was present for examination. Contrary to Sherry's representation on appeal, this person was not shown to be unavailable to be produced as a witness, only not to have been present in court. Absent an objection to proceeding without Przekopp's examination and with no request even at the hearing for her production, Sherry has not been deprived of her right of confrontation.

## III

*Sufficiency of the Evidence**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

## DISPOSITION

Judgment affirmed.

Wiener, Acting P. J., and Froehlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 17, 1991.

---

*See footnote 1, *ante*, page 339.