No. B075926. Second Dist., Div. Four. Mar. 16, 1995.]

In re ALICIA O., a Person Coming Under the Juvenile Court Law.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Plaintiff and Respondent, v.
BENNIE R. et al., Objectors and Appellants.

**[Opinion certified for partial publication.*]**

The juvenile court entered an order, pursuant to Welf. & Inst. Code, § 366.3, subd. (b), terminating a legal guardianship over a minor held by operators of a licensed foster family home, without providing reunification services. (Superior Court of Los Angeles County, No. BK07609, Marcus O. Tucker, Jr., Judge.)

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

COUNSEL

Janette Freeman Cochran and Jane Winer, under appointments by the Court of Appeal, for Objectors and Appellants.

De Witt W. Clinton, County Counsel, Lori A. Fields and Jill Regal for Plaintiff and Respondent.

OPINION

**WOOD (A. M.), P. J.**—Bennie and Lupe R. (appellants) appeal from an order terminating their legal guardianship over Alicia O. pursuant to Welfare and Institutions Code section 366.4.[1]

Alicia, born on March 15, 1976, is mentally retarded and suffers from kyphoscoliosis (curvature of the spine) and cardiac defects. She is unable to speak except through a kind of sign language and has the mental age of a two-year-old child. A section 300 petition was first filed in her case in October 1976, alleging abandonment by her mother.

Appellants, Mr. and Mrs. R., operated a licensed foster family home and specialized in the care of disabled children. Mrs. R. was active in various foster care groups. Alicia, who had been in long-term foster care from the time she was nine months old, was placed with appellants in November

---

[1]All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

1991. They sought and obtained legal guardianship of Alicia by order of the juvenile court on April 29, 1992. At that point, the juvenile court's dependency jurisdiction over Alicia was terminated.

On June 10, 1992, the department of children's services (DCS) filed a new section 300 petition in which it was alleged that appellants had physically abused three other minors in their care, Willie H., William A. and Desmond G.[2] The petition further alleged that these acts put Alicia, then 16 years old, at risk. A detention hearing for Alicia was conducted on June 11, 1992. The court found that a prima facie case for detaining her had been made and she was removed from appellants' custody. The court appointed Dr. John Leonard, a child psychiatrist, to examine Alicia and also ordered DCS to prepare a social study. In addition, the court ordered DCS to commence family reunification services to Alicia and appellants. The court set Alicia's case for adjudication on July 7, 1992, along with adjudication of the petitions on Desmond G. and William A.

At the July 7 hearing, the court ordered Alicia to remain detained but gave DCS discretion to release her to appellants and ordered a reevaluation of the foster home in which she had been placed.

A report by Dr. Leonard, dated July 10, 1992, stated that Alicia had been physically examined and there was evidence of sexual abuse. Dr. Leonard concluded that she was at risk for sexual abuse and that the results of the physical examination mitigated against reunification.

DCS investigative report, prepared by Karen Hokkanen, and dated July 21, 1992, presented statements detailing the alleged physical abuse by appellants of Desmond G. and William A. and referred to the physical examination of Alicia that revealed results consistent with "vaginal trauma/ sexual abuse." Hokkanen recommended termination of appellants' guardianship over Alicia and permanent placement services for her. No reunification plan was specified in the report.

The adjudication hearing was held on October 8, 1992. Appellants pleaded no contest to the amended petition, which alleged that they had inflicted "excessive physical punishment" on William A. and Desmond G. The minute order for that date shows that DCS was ordered to prepare a specific reunification plan for appellants and Alicia and gave DCS discretion to return her to appellants' custody. The matter was continued for the disposition hearing to November 25, 1992.

---

[2] The dispositional order in this case includes the dispositions as to William A. and Desmond G., though they are not subjects of this appeal. The record does not disclose the disposition of Willie H.'s case but he is not a subject of this appeal.

A second DCS report, prepared by Karen Hokkanen, and dated October 23, 1992, reported that Alicia was encopretic and that she "acted out" during a visit by appellants. She also reported that appellants had missed four visitations out of six. Attached to DCS report was a letter from Alicia's social worker, Philip Kunde, that stated she was receiving "excellent care" in the foster home to which she had been removed. Dr. Leonard also prepared a report, dated October 31, 1992, that contained an "addendum" to his earlier report regarding Alicia. He stated, based on an interview he conducted with appellants and the minors, including Alicia, that, while "nothing in this interview would indicate that [appellants] [are] anything but attentive guardians for Alicia. . . . Whether reunification is a viable plan for Alicia will depend on the outcome of the investigation of the [appellants'] home. Alicia's current foster mother called to tell me that Alicia's behavior had deteriorated following the interview. She had become agitated and unresponsive to usual forms of communications and her behaviors [*sic*] had become more active and inappropriate. . . . The foster mother also related that Alicia reacts with a similar form of disturbance following visits by Mrs. [R.]." Dr. Leonard stated that the interaction between appellants and the minors "was not warm" and concluded that "there is an indication that at some time all of these children have been abused." He recommended against reunification efforts.

On October 30, 1992, DCS filed a petition for termination of appellants' guardianship over Alicia on the grounds that she "is severely developmentally delayed[,] has severe scoliosis and is encopretic. Legal guardians have physically abused other minors in the home. It is in minor's best interest to terminate the guardianship."

At a hearing held on November 18, 1992, DCS took the position that, having filed a petition to terminate guardianship, there would be a recommendation of no reunification. Counsel for Mrs. R. replied, "Your Honor, neither the guardians nor the minors want termination of this guardianship. . . . You have ordered family reunification services [for] these parties. Nothing by the [DCS] has yet to be provided. Every bit of reunification has been done by [appellants]. They have gone to parenting and counseling. The [DCS] has done nothing. Today a detailed plan was due by the [DCS] outlining what the department was going to do for reunification. It is not here. They violated the court order. [Their] position now is that no reunification should be provided so they do not need to provide a report."

The court ordered DCS to provide points and authorities stating its reasons for its recommendation of no reunification.

The dispositional hearing commenced on November 25, 1992, as to Alicia, Desmond G. and William A., and continued on December 17, 1992,

February 4, 1993, February 25, 1993, February 26, 1993, and March 25, 1993.

Prior to the March 25 hearing, DCS filed a document entitled "Points and Authorities re Guardianship," in which it argued that appellants were not entitled to reunification rights coextensive with those of biological parents. Appellants filed a counter-document in which they argued that reunification services were available to legal guardians.

A total of 15 witnesses testified at the dispositional hearing and the court also received into evidence various reports including that of Dr. Leonard and Dr. Michael Ward, a clinical psychologist.[3] Dr. Ward's report, dated March 23, 1993, noted that Alicia "has now been out of [appellants'] home almost as long as she was in it," and while she had a "positive relationship to the [appellants], she also seems to have a positive relationship to most other people she interacts with." He concluded that if all things were equal, she should be returned to appellants but went on to state: "Whether or not all other factors are equal involves consideration of what this particular child needs and what [appellants] . . . can provide her as opposed to some other foster home. . . . About all I can say is that assuming [appellants] can provide what she needs, there would not appear to be any strong reason to preclude placing her back in that home."

Among the witnesses was Dr. Leonard, who testified that Alicia should not be reunited with appellants because of appellants' admission that they had inappropriately disciplined the other minors and what he perceived of as their lack of significant involvement with Alicia. He also testified that following visitation with appellants, Alicia's foster mother reported that she was more difficult to manage and less cooperative. Karen Hokkanen also testified against reunification for the reason stated in her report and because, in view of Alicia's limited verbal skills, "[s]he would in no way be able to call or seek help if something happened." Alicia's social worker, Philip Kunde, also testified that he would be uncomfortable with returning Alicia to appellants "with a sexually acting out boy also present" at appellants' home because Alicia is "nonverbal and . . . at some point in her life . . . she was sexually molested . . . ."

On April 5, 1993, the court made the following order: "The minor Alicia [O.] is declared a dependent of the court pursuant to section 300 subsections (A), (B), and (C) of the juvenile court file [sic]. The custody of the minor is taken from the parents and guardians [sic]. The minor is committed to the

---

[3]We set forth this evidence in the light most favorable to the order. (*In re Christina A.* (1989) 213 Cal.App.3d 1073, 1080 [261 Cal.Rptr. 903].)

care, custody and control of the Department of Children's Services for suitable placement as detailed in juvenile court dependency disposition minute order form. [¶] The court finds substantial danger exists to the physical and emotional safety of the minor and there remains no means to protect the minor without removal. [¶] Reasonable efforts have been made to eliminate the need for removal. . . . [¶] The [DCS] is to provide permanent placement services, long-term foster care for the minor. The court sets aside and terminates the guardianship and finds it is in the best interest of the minor that the guardianship be terminated and set aside and it would be detrimental to the minor that the guardianship remain in place."

The court went on to say that while "there is no evidence that this minor was in any way abused by the [appellants], I believe that the best interests of the minor require that she not be moved at this time because the [foster] home appears to be very appropriate and the minor appears to be very vulnerable. She is not a person who can communicate her problems and due to her vulnerability and due to the very fine nature and excellent care of the foster home and the fact that [appellants] have admitted to inappropriate discipline of other minors in their care, I think it is in the best interest of the minor to remain in her present foster home" and terminate guardianship.

It is from this order that appellants' appeal. We affirm.

I

Appellants contend that the court committed reversible error by denying them reunification services with Alicia to which they were entitled as her legal guardians under the statutes that govern section 300 dependency proceedings. ▮ DCS maintains that appellants were not entitled to such services because the order terminating their guardianship was made pursuant to DCS's petition to terminate guardianship under section 366.3, subdivision (b) as to which reunification services were not required.[4] The record supports DCS's contention.

Section 300 empowers the juvenile court to adjudge as a dependent child of the court any minor who comes within the descriptions set forth in that statute, which include a substantial risk that the minor will suffer physical harm either inflicted by a parent or guardian or as the result or failure of the

---

[4]In their reply brief, appellants contend that DCS's position represents a change from their legal position below and should not be addressed by this court because of the rule of appellate practice that prohibits a party from changing its legal theory on appeal. (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 316, p. 327.) Appellants are wrong, however. DCS has consistently argued that reunification was not required where, as here, it was seeking termination of a legal guardianship.

parent or guardian to supervise or protect the minor. (§ 300, subds. (a), (b).) "A section 300 dependency hearing is bifurcated to address two distinct issues. First, at the jurisdictional hearing, the court determines whether the child falls within any of the categories set forth in section 300. If so, the court may declare the minor a dependent child of the court. [Citation.] Then, at the dispositional hearing, the court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest. [Citation.]" (*In re Corey A.* (1991) 227 Cal.App.3d 339, 345-346 [277 Cal.Rptr. 782], fn. omitted.)

Prior to the dispositional hearing, the responsible probation officer must undertake a social study of the minor including matters relevant to disposition, including a recommendation for disposition. (§§ 280, 358, subd. (b), 358.1.) If the social study recommends removal of the minor from the home it "*shall* include . . . a recommended plan for reuniting the child with the family, including a plan for visitation" unless DCS alleges that any of the exceptions to reunification listed in section 361.5, subdivision (b) apply. (Cal. Rules of Court, rule 1455(a), italics added.) "The statutes and rules governing dependency actions clearly require that a family reunification plan be developed as a part of any dispositional order removing a child from its home. [Citation.]" (*In re Dino E.* (1992) 6 Cal.App.4th 1768, 1776-1777 [8 Cal.Rptr.2d 416].) The failure to provide reunification services is reversible error. (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1215 [31 Cal.Rptr.2d 75]; *In re John B.* (1984) 159 Cal.App.3d 268, 274-275 [205 Cal.Rptr. 321].)

In contrast to these procedures governing section 300 petitions, the procedure to terminate a guardianship does not mandate reunification efforts. Section 366.25 authorizes the appointment of a legal guardianship over a minor in a dependency proceeding. (§ 366.25, subds. (b), (e).) Where a guardian is appointed under these sections, dependency jurisdiction terminates but the court retains jurisdiction "over the minor as a ward of the guardianship" under section 366.3. That same section provides that a proceeding to terminate a legal guardianship may be brought in the juvenile court and, if granted, the court may resume dependency jurisdiction over the minor and order a new permanent plan from the appropriate agency. (§ 366.4.)

The procedure to terminate a guardianship is set forth in the California Rules of Court. Rule 1465(c) requires that the petition be filed in the juvenile court. Rule 1432 specifies the contents of the petition, including "[a] concise statement of any change of circumstance or new evidence that requires changing the [original] order . . . ." (Cal. Rules of Court, rule 1432(a)(6).) The court may grant the petition only where it "states a change

of circumstance or new evidence and it appears that the best interest of the child may be promoted by the proposed change . . . ." (Cal. Rules of Court, rule 1432(c).) Where the termination is contested, the petitioner bears the burden of proof and must show "by clear and convincing evidence" that grounds exist for the removal of the child from his or her legal guardian. (Cal. Rules of Court, rule 1432(f).) There is no requirement for reunification services anywhere in this statutory scheme.

Appellants' insistence that they were denied reunification services after the section 300 petition was filed ignores the fact that subsequent to the filing of that petition DCS determined reunification would not be beneficial to Alicia and filed a petition to terminate guardianship.[5]

DCS filed the petition to terminate guardianship on October 30, 1992. DCS's attorney referred to that petition during the first day of the dispositional hearing on November 18, 1992, as the reason DCS was not recommending reunification. She stated, "I have filed a petition for termination of gardianship. . . . I would prepare P's and A's as to that issue because that is the Department's plan, no reunification." Further, DCS did file points and authorities in which it restated its position that reunification services were not required on a petition to terminate guardianship.

There is no support for appellants' assertion that a separate hearing was required on the petition to terminate guardianship apart from the dispositional hearing that the court conducted not only on Alicia but also on William A. and Desmond G. The purpose of that hearing was to determine the best disposition for Alicia in view of appellants' admission that they had improperly disciplined the two boys. Whether characterized as a hearing on the section 300 petition or on the petition to terminate the guardianship, DCS was still required to prove by clear and convincing evidence that termination of the guardianship was in Alicia's best interest. (Cal. Rules of Court, rule 1432(f); § 361, subd. (b).)

Finally, it is clear from the language used by the court in its oral order that it was acting on DCS's petition to terminate the guardianship because the

---

[5]Although nowhere clearly stated, appellants apparently believed that once DCS initiated dependency proceedings under section 300, it was precluded from seeking to terminate the guardianship under section 366.3. They cite no authority for that proposition, however, nor has our own independent research revealed any support for this position. We would be concerned only if there was a significant difference between dependency proceedings and proceedings to terminate a guardianship in due process terms, but no such difference exists. Petitions to terminate guardianship are not summary but require notice and hearing and, where the hearing is contested, clear and convincing proof that termination is in the minor's best interest. (Cal. Rules of Court, rule 1432(f).) The only substantive difference is that reunification services are not part of the termination procedure. Appellants fail to make any showing that the absence of such services in the statutory scheme governing termination violates any other statutory or constitutional right.

court used the best interest standard set forth in rule 1432 of the California Rules of Court. The court said: "The court sets aside and terminates the guardianship and finds it is in the best interest of the minor that the guardianship be terminated and set aside and it would be detrimental to the minor that the guardianship remain in place." The court could have, had it intended to deny that petition, returned Alicia to appellants and ordered reunification services as it did when making the dispositional order as to William A., whom it placed with appellants for a 60-day home visit with reunification services.

In summary, we conclude that the court terminated appellants' legal guardianship over Alicia pursuant to a properly filed petition to terminate guardianship. This was done after notice and hearing to appellants and reunification services were not required under such petition.

## II*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

We conclude that the evidence was sufficient to support the order terminating guardianship.

The order is affirmed.

Epstein, J., and Vogel (C. S.), J., concurred.

---

*See footnote, *ante,* page 176.