Filed 6/25/15  In re Z.M. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re Z.M., a Person Coming Under the Juvenile Court Law. | B260026 (Los Angeles County Super. Ct. No. CK99278) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>DIANA M. et al.,<br><br>        Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County. Tony L. Richardson, Judge.  Affirmed.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Andre F. F. Toscano, under appointment by the Court of Appeal, for Defendant and Appellant Diana M.

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant Kent M.

No appearance for Minor.

* * * * * *

The juvenile court asserted dependency jurisdiction over a four-year old girl after sustaining multiple allegations against her father. At the six-month review hearing, the court terminated jurisdiction and issued an "exit order" under Welfare and Institutions Code section 362.4[1] awarding sole physical custody to mother but joint legal custody to both parents. Father appealed the juvenile court's termination of jurisdiction, but later abandoned that appeal. Mother challenges the juvenile court's award of joint legal custody. Concluding there was no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

Diana M. (mother) and Kent M. (father) are the biological parents of Z.M. (born Sept. 2009). In 2013, Z.M. had bruises and reported that "daddy did it." When the Los Angeles Department of Children and Family Services (Department) investigated, it determined that father was out of town when Z.M.'s injury occurred and that Z.M. had a rare blood disease. At the same time, the Department discovered that father's parental rights over his son (and Z.M.'s half-brother) Jeremiah had been terminated in 2008 after the juvenile court sustained allegations that father had used drugs in front of Jeremiah's half-sister (Trinity) and had physically, emotionally and sexually abused Jeremiah's half-sisters (Christina and Jacqueline).

The Department filed a petition seeking to assert dependency jurisdiction over Z.M. based on (1) father's history of drug use and his recent use of methamphetamines (under § 300, subd. (b)), (2) father's mental illness (under § 300, subd. (b)), and (3) father's physical, emotional and sexual abuse of Christina and Jacqueline (under § 300, subds. (a), (b), (c), (d) & (j)).[2] The juvenile court sustained these allegations, asserted dependency jurisdiction, and placed Z.M. in mother's physical custody.

At the six-month review hearing, the juvenile court (1) reviewed the psychological

---

[1]     All statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     The Department also alleged that mother and father did not properly care for Z.M.'s blood disease, but that count was subsequently dismissed.

evaluation report prepared by Dr. Nancy Kaser-Boyd, and (2) permitted father to testify regarding his prior role in taking Z.M. to her medical appointments, ballet and swimming classes and in paying for her schooling, as well as his desire to remain involved in making these decisions for her. The juvenile court terminated jurisdiction, and issued an "exit order" that (1) awarded mother sole physical custody of Z.M., (2) awarded mother and father joint legal custody of Z.M., and (3) set a visitation schedule for father.

Mother and father timely appealed.

## DISCUSSION

### I. Father's Appeal

In his notice of appeal, father appeals the juvenile court's order terminating jurisdiction as invalid for not ordering "reasonable services to father." We conclude there was no error because (1) father abandoned his appeal when his appellate counsel filed a brief under *In re Phoenix H.* (2009) 47 Cal.4th 835 that indicated there were no arguable issues on appeal and father declined to file a supplemental brief, and (2) on the merits, dependency jurisdiction may be terminated without offering any further services (§ 364).

### II. Mother's Appeal

Mother argues that the juvenile court erred in awarding joint legal custody because father "based on who he really is" should have been denied the right to make decisions about Z.M.'s upbringing. More specifically, mother contends (1) Dr. Kaser-Boyd's evaluation indicates that father is unfit to make such decisions, (2) father's testimony that he is interested in making decisions is "self-serving," (3) father never completed the sexual counseling he was ordered to undertake, and (4) it will be more difficult for mother to make decisions if she has to do so jointly with father. The Department takes no position on mother's appeal, but father filed a brief in opposition to mother's appeal.

When a juvenile court terminates dependency jurisdiction over a child, "it is empowered to make 'exit orders' regarding custody and visitation" that carry over to ongoing family court proceedings or that can serve to initiate such proceedings. (*In re T.H.* (2010) 190 Cal.App.4th 1119, 1122; § 362.4; *In re Cole Y.* (2015) 233 Cal.App.4th

3

1444, 1455 (*Cole Y.*) [noting how § 362.4 orders are called "exit orders"]; *In re Jennifer R.* (1993) 14 Cal.App.4th 704, 711-712.) In deciding custody and visitation, the juvenile court has "'broad discretion to decide what means will best serve the child's interest.'" (*Cole Y.*, at p. 1456, quoting *In re Corey A.* (1991) 227 Cal.App.3d 339, 346.) We accordingly review the terms of an exit order for an abuse of discretion. (*Ibid.*)

Mother does not challenge the exit order's award of physical custody or visitation rights to father; instead, she challenges the juvenile court's determination that she and father have joint legal custody of Z.M. "'Joint legal custody' means that both parents share the right and the responsibility to make decisions relating to the health, education, and welfare of a child." (Fam. Code, § 3003.) In this case, the juvenile court had before it father's testimony that he had been previously involved in such decisions for Z.M., and desired to continue that involvement.

Mother nevertheless offers four reasons why the juvenile court abused its discretion in allowing father to have input in the decisions regarding Z.M.'s upbringing. First, she argues that Dr. Kaser-Boyd found father to be unfit to make decisions regarding Z.M. However, Dr. Kaser-Boyd's report expressed "concerns about [father's] safety as a custodial parent" and "recommend[ed] a continuation of monitored visitation"; the report did not address father's ability to make decisions regarding Z.M.'s schooling and welfare. Mother argues that the juvenile court asked Dr. Kaser-Boyd to opine on that topic, but the court's request for examination of whether father should "ever have some form of shared custody" was made in the context of the assessment of "reunification," visitation and physical placement. Moreover, the juvenile court's request does not in any event change what the expert actually covered in her report.

Second, mother contends that father's expressed interest in Z.M.'s upbringing is self-serving, and is not credible in light of his dubious claims of his ties to various covert law enforcement agencies and his alleged happiness at Jeremiah's adoption by others. However, the juvenile court credited father's testimony regarding his interest, and we are in no position to second-guess that credibility finding. (*People v. Tully* (2012) 54 Cal.4th

952, 984 ["we do not second-guess the trial court's credibility findings . . ."].)

Third, mother points to father's failure to complete the sexual abuse counseling program the juvenile court ordered. Although this failure may well have bearing on whether Z.M. should be returned to father's physical custody, mother does not explain how it bears on father's ability to provide input on questions of Z.M.'s "health, education and welfare."

Lastly, mother argues that involving father in the decision-making process will make things more difficult. But, as the trial court observed, "[t]he fact that it might be difficult for [mother and father] to come to joint decisions does not preclude or suggest that [father] shouldn't be able to participate in those decisions. That happens with most families."

On the facts of this case, the juvenile court could have awarded either sole legal custody to mother or joint legal custody to both parents; either choice was within its discretion, and its selection of the latter was not an abuse of that discretion.

**DISPOSITION**

The order terminating jurisdiction and awarding joint legal custody is affirmed.
<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                        HOFFSTADT

We concur:


_____, P. J.
          BOREN


_____, J.
        ASHMANN-GERST

5