Filed 3/5/24  In re Z.P. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| In re Z.P. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, | G063097 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 23DP0427, 23DP0428 & 23DP0429) |
| v. | |
| A.N. et al., | O P I N I O N |
| Defendants; | |
| Z.P. et al., Minors, etc., | |
| Appellants. | |

Appeal from orders of the Superior Court of Orange County, Lindsey E. Martínez, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Minors and Appellants.

Leon J. Page, County Counsel, Karen L. Christensen and Aurelio Torre, Deputy County Counsel, for Plaintiff and Respondent.

No appearance for Defendants.

Minors Z.P., A.P., and E.P. (collectively the children or minors) appeal from the juvenile court's disposition orders returning them to their parents' custody. (Welf. & Inst. Code, § 361.)[1] Minors contend (1) the court erred by denying their request for a continuance of the hearing that resulted in the orders and (2) that insufficient evidence supported the orders.

Minors do not show the court abused its discretion by denying a continuance, nor do they show the evidence compelled a conclusion that they should have remained outside of parental custody as county services were provided. We affirm the disposition orders.

FACTS

I.   *Minors' Detention by the Juvenile Court*

Minors first became involved with the juvenile court in April 2023, when the two oldest were attending elementary school and the youngest was less than a year old. Their parents had "been together on and off for about 20 years"—we will refer to them as Mother and Father.

In March 2023, a month before this case started, Mother reportedly "dr[ove] erratically in a school parking lot with a baby in the back seat of the car in a car seat. Mother left the lot and returned 5 to 10 minutes later[,] entering the lot the wrong way [and positioning her vehicle to] fac[e a] school bus." Her infant "was dirty," and "Mother had smoke coming out of her mouth." The eldest child "smelled like marijuana [and] reported he only shower[ed] once a week." Seven months earlier, Mother had expressed "having intrusive thoughts of harming herself but no specific plan [or] intent" to act on them. "She said she had anxiety about her children going back to school" and could not "take her bipolar [disorder medication] while pregnant, so she smoke[d] marijuana to help her with the intrusive thoughts."

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

In April 2023 (all further dates without mention of year will refer to 2023), the Orange County Social Services Agency (SSA) reported to the juvenile court that minors "were removed [that month] from the parents' care and brought into protective custody by [law enforcement officers] due to allegations of general neglect and caretaker absence."[2] Officers had been "called to [Mother's two-bedroom apartment] home due to a disturbance where it was reported [she] was banging on windows to the apartment." Mother "refused to open the door," claiming she was "not fully dressed" because she was breastfeeding her infant and "therefore . . . unable to open the door." The infant "was found with a soiled diaper" and officers described the apartment as "filled with trash, cockroaches, and flies." There was spoiled food, no clean clothes for the children, a soiled mattress, and there had been no running water in the residence for two weeks. Mother stated she did "not keep cleaning products in the home [because she was] afraid the children w[ould] drink them, or the father w[ould] put products in the food."

The day after removal, the eldest child, then in the fourth grade, was diagnosed as having an eye infection. When interviewed, he reported feeling "a 'little bit'" safe with Mother, explaining she could "'get[] crazy,'" like when she dumped cigarettes into his fish tank and the fish died. He reported feeling "safe" with Father but also stated Father slept "when [Mother acted] 'crazy' because he need[ed] to sleep for [nightshift] work. The child reported [Father] knows how [Mother] behaves and he just tells her to not behave that way and tells the child to not take away her cigarettes."

On the day minors were removed, Father "was called several times . . . [but] contact was unsuccessful." When he was eventually interviewed, Father "described [his family's] home as 'a little fair' and 'a bit dirty.' [Father] reported all the children sle[pt] with [Mother] in [Mother]'s bedroom on a single mattress and [Father] sle[pt] in

---

[2] Immaterial to this appeal, "[M]other and [Father] were arrested and . . . charged with three counts of violating Penal Code 273a[, subdivision] (b)—child abuse and endangerment." "No other records were found."

the living room because 'he snores a lot.' [Father] reported he clean[ed] the house 'every now and then' and . . . remembered [last] cleaning the home" the month before. He tried to explain why the family "ke[pt] . . . trash inside of the apartment." He claimed he had tried to trap the cockroaches and that "the landlord [was] aware" the family and several neighbors did not have running water.

Father reported Mother "'seem[ed] fine' when she [was] on her medication." He reported Mother "smoke[d] 'everything, all the time,'" specifying "cigarettes, marijuana, and vapes," but denied she "ever used any other drugs, including methamphetamine or alcohol."

## II.  *Juvenile Court Proceedings*

SSA filed a juvenile dependency petition based in part on section 300, subdivisions (b)(1) (failure to supervise or protect children),[3] and recommended the juvenile court order physical custody of the children be vested with SSA and that the parents be allowed supervised visits. The petition alleged the children were at risk of harm because of Mother's "substance abuse" and "unresolved mental health issues, which interfere[d] with [Mother's] ability to provide appropriate care and supervision for the children." The petition also alleged that, given Father's knowledge of "[M]other's bipolar diagnosis and that she ha[d] previously attempted to commit suicide and had a history of psychiatric hospitalization," he "exposed the children . . . to an unsafe and unsanitary home environment" by "continu[ing] to leave the children in [M]other's sole care." The petition also alleged "[F]ather and [Mother] engage[d] in arguments over [Mother]'s use of medications and her bipolar disorder" and thereby exposed the children to "domestic violence."

The juvenile court appointed counsel for the children and adopted SSA's recommendation by ordering the children to remain outside of their parents' custody

---

[3]  Other allegations later became irrelevant because of subsequent litigation not material to this appeal.

4

while SSA provided family reunification services. The court also ordered that the parents be allowed supervised visits, with SSA "authorized to liberalize the frequency and duration of visitation[] as [it] deemed appropriate." The children's maternal uncle was authorized to supervise the visits. He agreed to take physical custody of the children as the case moved forward and later expressed a willingness to adopt them.[4] SSA reported that Mother "shared she d[id] not have any concerns about the children being placed with the maternal uncle as she kn[ew] they w[ould] be well taken care of."

Over the next four months, the parents engaged in family reunification services, through August 23, when the juvenile court held its jurisdictional hearing pursuant to section 355. By then, the parents had moved into a new residence earlier that month. SSA provided pictures of the furnished home to the court along with its inspection report.

SSA maintained its initial recommendation that the children stay outside of parental custody as offered services continued. At that time, the children were staying with their parents overnight once a week, unsupervised, at the new home.

The juvenile court found that the preponderance of evidence showed the children fell within the provisions of section 300, subdivisions (b)(1), as SSA alleged. Notwithstanding, the court and parties discussed the parents' progress with services and how to increase unsupervised overnight visitations as part of a broader path to returning the children to parental custody. Minors' counsel advocated to not rush the timeline. For example, counsel stated, "[W]e want to make sure that the parents are able to take care of

---

[4] When the case first started, the maternal uncle told SSA there were "'a lot of issues with [Mother] because she [was] a recovering drug addict, which started [decades ago,] when she was 17 to 19 years old.'" He stated Mother had been "'in an[d] out of drug rehabs'" during that time of her life. More recently, he had witnessed Mother leave the infant "'in the car by herself, so she [could] smoke cigarettes and marijuana,'" which he believed was what she consumed, as opposed to past drugs like crack cocaine.

the [children] before we do an outright [return of the children to custody]. I'm certainly not against [the parents]. But when I am told by caretakers that [the parents] aren't taking the [infant] for the same length of time as the other [two children], and there's issues like that, I know there's two different versions of that with the parents and the caretakers. But we just want to make sure that they can handle all three of them."

The juvenile court set a disposition hearing, pursuant to section 358, for two weeks out. Immediately after the August 23 jurisdiction hearing was completed, SSA liberalized visitation to allow the parents to have their children sleep at the new home twice a week. Then, on the day before the court's September 6 disposition hearing, SSA submitted a report addendum changing its position on physical custody. SSA recommended that the children be allowed to return to their parents' care.

On the morning of the September 6 disposition hearing, minors unsuccessfully requested a continuance, citing SSA's change in recommendation. That afternoon, social worker Melanie Rawlins appeared as a witness that SSA had indicated would appear (without specifying who) to provide testimony. Rawlins had been assigned to the case early on and collaborated with fellow social worker Kirkland Huynh, who co-authored some reports. Rawlins testified that, although she had authored the addendum's change in recommendation, Huynh had worked exclusively on some aspects of the case that minors' counsel was cross-examining Rawlins about. For example, Rawlins testified that Huynh was the social worker who directly communicated with service providers such as Mother's psychiatrist, psychologist, and therapist.

After receiving Rawlins's testimony and SSA's reports and addendums into evidence, the juvenile court heard oral arguments where counsel for the minors opposed arguments, by SSA and the parents, for the minors to be returned to the parents' custody with family maintenance services provided by SSA. The court decided in favor of SSA and the parents and scheduled a six-month review hearing. Minors timely appealed.

DISCUSSION

"[A]t the dispositional hearing, the [juvenile] court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest." (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346.) We discuss minors' two contentions in turn and, for the reasons stated below, conclude that neither shows error.

I. *Denial of Continuance Request*

Minors contend the juvenile court's denial of their request to continue the disposition hearing was an "abuse of the court's discretion since minor's counsel was informed of the change in recommendation the day of the hearing and [social worker Huynh] had relevant information as to the best interest of the children." Section 352, subdivision (b), was indirectly referenced in this case by the juvenile court when it discussed its denial decision. The subdivision states in relevant part that, "[n]otwithstanding any other law, if a minor has been removed from the parents' or guardians' custody, a continuance shall not be granted that would result in the dispositional hearing, held pursuant to [s]ection 361, being completed longer than 60 days . . . after the hearing at which the minor was ordered removed or detained, unless the court finds that there are exceptional circumstances requiring a continuance." (§ 352, subd. (b).)

Although SSA discusses the subdivision in its appellate briefing, minors do not. Instead, the sole authority they cite to, without discussion, for their contention is *In re Vincent G.* (2008) 162 Cal.App.4th 238, an appeal that involved juvenile delinquency probation conditions about association with gangs (*id.* at p. 241, fn. 2). That case is facially inapt because it did not involve section 352, subdivision (b). Accordingly, without deciding the merits of minors' contention, minors have forfeited the issue of

7

whether the juvenile court erroneously denied their continuance request.[5] ""“Appellate briefs must provide argument and legal authority for the positions taken.” [Citation.] “When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived.”"" (*In re J.F.* (2019) 39 Cal.App.5th 70, 79.)

We note that if we reached the merits of minors' argument, minors would have had to demonstrate that “exceptional circumstances” justified overriding the above-quoted 60-day deadline (§ 352, subd. (b)), given it had lapsed by the time of the September 6 disposition hearing. On the point, we note minors do not dispute that two weeks before the hearing, the parties and the juvenile court had discussed the possibility that the change in recommendation would occur. We also note that minors do not discuss why the usual procedural mechanisms of securing the appearance of social worker Huynh (or any other witness helpful to their position) were inadequate to ensure the testimony they claim, in a conclusory fashion, prejudiced them. (See *Andrea L. v. Superior Court* (1998) 64 Cal.App.4th 1377, 1387, fn. 3 [“once jurisdiction over a minor has been established, the admissibility of [social worker] reports is no longer conditioned on the availability of the author for cross-examination”].)

II. *Evidence Sufficiency*

Next, we consider minors' argument that insufficient evidence supported the juvenile court's disposition orders. To justify an order removing a child from parental custody, a court is required to make one of five specified findings based on a heightened clear and convincing evidence standard of proof. (§ 361, subd. (c).) "'Clear

---

[5]     Minors assert one other argument in their opening brief based on section 292 (notice requirements for postdisposition proceedings). But based on their lack of response to SSA's argument that the statute did not apply to the hearing at issue, we conclude minors concede the issue is immaterial to their appeal. (*Johnson v. English* (1931) 113 Cal.App. 676, 677 [“[a]ppellant, by failing to file a reply brief, concedes that respondent's position is unassailable”].)

and convincing' evidence requires a finding of high probability. The evidence must be so clear as to leave no substantial doubt. It must be sufficiently strong to command the unhesitating assent of every reasonable mind. [Citations.]" (*In re David C.* (1984) 152 Cal.App.3d 1189, 1208; accord, *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011-1012.)

The ground at issue in this case required two findings: "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, *and* there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1), italics added.) In the juvenile court, minors had a burden (independent of SSA's own burden) to show clear and convincing evidence satisfying the findings. (Evid. Code, §§ 500, 550; see *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527, disapproved on other grounds in *Conservatorship of O.B., supra*, 9 Cal.5th at p. 1003, fn. 4.) Consequently, on appeal, minors have a burden to show the evidence *compelled* a finding in their favor, as a matter of law. (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.)

Although minors' appellate briefing acknowledges their heavy burden, they repeatedly argue that the evidence merely "*supported* an order of removal" (italics added). They quote the juvenile court's comments about its disposition ruling, which addressed minors' counsel's position within the context of section 361, subdivision (c)'s evidentiary burden: "While I share some of [minors' counsel]'s concerns, clear and convincing evidence is a high burden. If you can't clear that hurdle, the children must go home with the parents. Ideally, I also would have liked to see someone seeing the kids in the home with the parents, but that is not actually required by law, and there is no articulated clear and convincing risk. There were some explanations proffered for why the baby was returned early. I can't speculate, and I am also not clairvoyant and can only assess what I have before me today. [¶] . . . [¶] I will adopt [SSA]'s recommendation in

9

[its latest addendum] report, that custody of the children will be vested with [M]other and [F]ather under family maintenance."

We apply the substantial evidence standard of review to the two statutory findings that were at issue in the juvenile court. Doing so, we first conclude that minors' insufficient evidence argument fails because they present no meaningful analysis why the evidence should have compelled the juvenile court to decide, on the second required finding, that there were "no reasonable means by which the minor's physical health [could] be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

The absence of analysis is critical given the juvenile court's decision was not irreversible. (See § 388 [petitions to modify order based on changed circumstances].) "'[O]ut-of-home placement is not a proper means of hedging against the possibility of failed reunification efforts, or of securing parental cooperation with those efforts. It is *a last resort*, to be considered only when the child would be in danger if allowed to reside with the parent. The law requires that a child remain in parental custody pending the resolution of dependency proceedings, *despite the problems that led the court to take jurisdiction over the child*, unless the court is clearly convinced that such a disposition would harm the child. The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children.' [Citation.]" (*In re M.V.* (2022) 78 Cal.App.5th 944, 959.)

In this matter, there is no dispute the parents were engaging the services offered to them and endeavoring to improve the circumstances that precipitated this case. For example, minors acknowledge in their briefing (as they must, because they challenge evidence sufficiency) that evidence presented to the juvenile court showed both Mother and Father gained awareness of the issues their past parenting created for their children. Minors brief that "Mother ha[d] been honest that she did not take her medication as prescribed" and "underst[ood] the seriousness of her mental health" challenge. They

10

appropriately cite to Rawlins' testimony that, at the time of the disposition hearing, Mother was "doing very well," including "taking her medication" and "following up with her psychiatrist and psychologist."[6]

Minors argue, however, that "between August 23[, the juvenile court's jurisdiction hearing, and] September 6 [, the court's disposition hearing], there were no change of events from which to conclude [SSA]'s concerns listed in [its] August 23[] report had been resolved." The argument is unpersuasive because resolution of earlier concerns is not the test. Instead, as noted, the issue is whether the evidence that was presented should have compelled the court to find both "substantial danger" to a child *and* "no reasonable means" to protect the child "without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).) Given the particular record here, a lack of resolution of earlier identified issues did not preclude a conclusion that the two statutory conditions were not satisfied.

Minors imply that because the juvenile court made findings at its August jurisdictional hearing to justify the court's jurisdiction, and the underlying issues remained unchanged, those same findings should have compelled a conclusion (two weeks later) that the grounds for an out-of-placement disposition order were satisfied. The argument fails at its premise because it does not account for the heightened evidentiary burden that applied at the disposition hearing. (Compare § 355, subd. (a) [preponderance of evidence standard at jurisdiction hearing] with § 361, subd. (c) [clear and convincing evidence standard at disposition hearing].) What is sufficient for assuming juvenile court jurisdiction is not necessarily sufficient for justifying an out-of-home disposition order.

---

[6]     Rawlins reported Mother expressed the following: "'I hope to be with my children again and I hope to plan family togetherness. My dad left me when I was younger and that's why my brother tries to be a part of the kids['] li[ves].' . . . 'I try hard for the kids. I want them to know they have an anchor, that no matter where they are they have us.'"

11

The argument is also unpersuasive because when we apply the substantial evidence standard of review, reasonable inferences favor the party that prevailed below. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012.) To illustrate, we note minors accurately point out there was no affirmative evidence that no substance abuse issue of Mother's existed by the time of the disposition hearing. But within the context provided by the record, the absence does not negate a reasonable inference that any substance abuse issue that existed at the start of the case had been sufficiently ameliorated to safely return the children to parental custody while family maintenance services were provided. It is undisputed that Mother had previously self-medicated with marijuana when she had not been taking psychiatric medications but, as noted, that she had been taking her medication by the time of the disposition hearing. In other words, the point does not compel a conclusion that section 361, subdivision (c)(1), required out-of-custody placement.

Given the above, the remainder of minors' position on appeal amounts to a request for us to reweigh the evidence and reach a conclusion different from the juvenile court's. But we cannot ignore the respective roles of the juvenile court and this court. (*In re R.T.* (2017) 3 Cal.5th 622, 633; see *In re E.E.* (2020) 49 Cal.App.5th 195, 217 ["'[t]he trial court is in the best position to determine the degree to which a child is at risk based on an assessment of all the relevant factors in each case'"].) As quoted earlier, the juvenile court in this case agreed with some of the points minors' counsel made in closing arguments, before concluding the evidence nonetheless fell short of justifying an out-of-home placement as family services continued. Failure to implement best practices, by itself, is insufficient to satisfy the high burden set by section 361, subdivision (c)(1). Minors do not show a basis to overturn the juvenile court's decision because their interpretation of the evidence relies on a view favorable to them and not the court's decision. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at pp. 1011-1012.) In sum, they have not carried the heavy appellate burden to show the evidence compelled the

12

court to conclude there was both "substantial danger" and no reasonable alternative to out-of-home placement.  (§ 361, subd. (c)(1).)

## DISPOSITION

The dispositional orders returning the children to their parents' physical custody are affirmed.


O'LEARY, P. J.

WE CONCUR:


GOETHALS, J.


SANCHEZ, J.