[No. D062952. Fourth Dist., Div. One. Feb. 28, 2013.]

In re MADISON T., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
KELLY S., Defendant and Appellant.

COUNSEL

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Daniela Davidian, Deputy County Counsel, for Plaintiff and Respondent.

Lisa Storing, under appointment by the Court of Appeal, for Minor.

## OPINION

**McCONNELL, P. J.**—Kelly S. appeals the dispositional judgment in the dependency case of her daughter, Madison T. Kelly contends the juvenile court abused its discretion by admitting prejudicial hearsay evidence, and thus we must reverse the order placing Madison in foster care. We affirm.

## BACKGROUND

In September 2012, the San Diego County Health and Human Services Agency (the Agency) filed a dependency petition for one-month-old Madison. (Welf. & Inst. Code, § 300, subd. (b).)[1] The petition, as subsequently amended, alleged Kelly had a mental illness, including chronic paranoid schizophrenia. In the past, this caused her to have mood disturbances, delusions, hallucinations, memory impairment, emotional withdrawal and paranoia. Kelly was not under the care of a psychiatrist and was not taking medication for her illness. When Madison was born, Kelly tested presumptively positive for marijuana. Kelly later admitted smoking marijuana during pregnancy. Madison stopped breathing shortly after birth and was admitted to the hospital due to apnea and cyanosis. Approximately one month later, she was admitted to the hospital due to bronchiolitis. At the hospital, Kelly's boyfriend punched Kelly in the abdomen. Madison was exposed to violence when the boyfriend grabbed and pulled the chair on which Kelly was sitting, and Kelly tore the boyfriend's visitor's bracelet from his wrist. Kelly minimized the incident and refused to obtain a restraining order. Madison continued to experience episodes in which she stopped breathing and turned blue, but Kelly failed to report this to the pediatrician, in violation of Kelly's safety plan with the Agency. Kelly left Madison unattended at times when she cried, although Kelly knew Madison had previously stopped breathing while crying. Kelly also has a history of methamphetamine use.

Madison was detained in a foster home. On September 20, 2012, Kelly entered residential substance abuse treatment at North County Serenity House (Serenity House). On September 25, Serenity House substance abuse coordinator Andrea Kinley told social worker Judy Wonders[2] that Kelly "was very abrasive and blaming when she first arrived, but currently seems to be more accepting and calmer." In a report filed on October 15, Wonders stated, "if Madison is placed with [Kelly] before she has . . . stabilized in treatment and demonstrated that [she] will stay in treatment, Madison would be at risk for neglect or abuse. The Agency would like to see [Kelly] demonstrate that she can stay in substance abuse treatment and continue her mental health services for at least four months before considering placement." In her final report, filed on October 19, Wonders continued to recommend foster placement. The report stated: "The Agency's goal continues to be placement with [Kelly] in her treatment program. However, the Agency would like to see [Kelly] enrolled in all of her case plan services and demonstrating that she will remain at . . . Serenity House and will continue[] to take her psychotropic

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Wonders had been a social worker for more than 10 years.

medications. The Agency would also like to see [Kelly] participating in services for at least [two]-[four] months before considering placing Madison in her care."

The jurisdictional and dispositional hearing began at 9:00 a.m. on Tuesday, October 23, 2012. Wonders testified she had left a message for Kinley, requesting an update on Kelly's progress. Wonders then received a voice mail message from Kinley on Monday, October 22, Wonders's day off. Wonders retrieved the message the morning of the hearing. Over a hearsay objection by Kelly's counsel, Wonders testified to the content of Kinley's message. Kinley said "that [Kelly] is not ready to have Madison placed in her care at this time; that [Kelly] has not made enough progress in treatment; an[d] that [Kelly] is . . . still in denial of her addiction; and that [Kelly] has not gained enough insight about her addiction . . . ." Kinley related her "concerns about [Kelly]'s behavior" and said Kelly "is on contract for having outbursts during groups, yelling at staff and peers . . . ."

The court made a true finding on the petition.[3] The court ordered Madison removed from Kelly's custody and placed in foster care, with reunification services for Kelly. The court gave the Agency discretion to allow a 60-day trial visit between Kelly and Madison, with the concurrence of Madison's counsel.

## DISCUSSION

Kelly contends the court abused its discretion by allowing Wonders to testify to the content of Kinley's voice mail message. Kelly contends "[t]he admission of . . . Kinley's out-of-court declaration . . . was particularly egregious because [her] counsel had no warning that this last minute declaration existed," so counsel had no opportunity to speak with Kinley or otherwise investigate. The court did not abuse its discretion by admitting the testimony. (See *In re Tasman B.* (1989) 210 Cal.App.3d 927, 936 [258 Cal.Rptr. 716].)

■ "Before determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered . . . ." (§ 358, subd. (b).) "At the . . . dispositional phase, any relevant evidence including hearsay shall be admitted pursuant to section 358, subdivision (b) to help the court determine the child's best interests." (*In re Corey A.* (1991) 227 Cal.App.3d 339, 347 [277 Cal.Rptr. 782] (*Corey A.*).)

---

[3] Kelly does not challenge the jurisdictional finding.

 *Corey A.* is dispositive here. In general, a social worker's testimony at a dispositional hearing is largely based on hearsay. If it is appropriate for the social worker to rely on a particular item of evidence in making a dispositional recommendation, the fact that the evidence is hearsay is not objectionable as long as the evidence is otherwise reliable, as it was here. (See *In re Cindy L.* (1997) 17 Cal.4th 15, 33 [69 Cal.Rptr.2d 803, 947 P.2d 1340].)

Even if the admission of Wonders's testimony had constituted error, it would not have been prejudicial. The uncontested jurisdictional findings provide substantial evidence that it was necessary to remove Madison from Kelly's custody. In its dispositional ruling, the court cited information from Serenity House, and noted the case was complex because Kelly had "to address mental health issues, domestic violence issues, and substance abuse issues . . . concurrently." At the time of the hearing, Kelly had been sober for fewer than three weeks. In the report filed on October 19, 2012, Wonders related a conversation with Kelly that had taken place on October 18, just five days before the hearing. Kelly told Wonders that she had spoken "with her counselor and [was] on the waiting list for a room with a crib[, but] her counselor told her that she should wait another month to stabilize and get enrolled into her case plan services before asking to have Madison placed in the program. However, if Madison needed to be place[d] prior to the month she would consider placement sooner if needed."

## DISPOSITION

The judgment is affirmed.

McIntyre, J., and O'Rourke, J., concurred.