Filed 7/31/14  In re Eli B. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re ELI B., a Person Coming Under the Juvenile Court Law. | B250429 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>DAVID B.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK83432) |

        APPEAL from orders of the Superior Court of Los Angeles County, Debra Losnick, Juvenile Court Referee.  Affirmed.

        John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Appellant.

        Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

———————————

INTRODUCTION

David B. appeals from the disposition order of the juvenile court that removed his infant son Eli B. from his custody (Welf. & Inst. Code, § 361, subd. (c)).[1] The Department of Children and Family Services (the Department) appeals challenging the court's order denying the Department permission to file a first amended petition that named father (§ 300). We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The detention report and last minute information for the court dated March 13, 2013*

Eli was born in late February 2013, with permanent pulmonary hypertension. The hospital placed a hold on the baby because of the failure of his mother, Nora B., to reunify with her older two children and possibly because of the inability of both of Eli's parents to properly or safely care for the baby.

Father had no permanent address and never knew where he would sleep from one night to the next. To care for the baby, father planned to move in with his mother in her one bedroom apartment in Calabasas. The paternal grandmother welcomed Eli, but without mother or father.

The Department filed a petition alleging that mother has a history of being beaten by the father of Eli's siblings in the presence of the children, and of allowing that father to have access to the older children, and that mother failed to reunify with Eli's siblings. (§ 300, subd. (j).) The petition contains no allegations concerning Eli's father.

At the detention hearing, the juvenile court declared David B. to be Eli's presumed father. The court then detained Eli and released him to father "*on condition that father resides in the home of paternal grandmother.*" (Italics added.)

2. *The detention report dated April 3, 2013*

The Department received an emergency referral alleging emotional and physical abuse of Eli by mother and general neglect of Eli by father. The detention report

---

[1] All further statutory references are to the Welfare and Institutions Code.

contained the following: A Glendale Police officer reported that father had called the police on March 28, 2013 requesting that law enforcement pick him and Eli up because he had been drinking and did not feel safe having the child with him. Arriving at a designated parking lot at midnight, the officer smelled alcohol on father's breath. Father explained that he and mother had argued while riding the bus from Hollywood. Father had asked mother to hand the child to him and suggested he was recording mother on his cell phone. Mother reportedly took father's phone and slammed it on the ground. Mother refused to return Eli to father because father had been drinking. Father had stayed in a "seedy motel with the child the night before." The police arrested mother based on outstanding warrants for theft and a municipal code violation and detained Eli. Father gave a similar report of the events.

Meanwhile, the paternal grandmother had left for vacation on March 27, 2013, and did not know where father was. Asked whether father was living with her as ordered by the juvenile court, the paternal grandmother replied that father worked in Hollywood and stayed with family friends and others to avoid the long commute west with the baby.

The maternal grandmother confirmed that father was *not* living with the paternal grandmother as father worked in Hollywood. She believed father was an alcoholic because he is "always drunk on the streets with the child." She reported that father does not appear well, and heard from mother that father uses "rock" and marijuana. Father has dropped the child off with the maternal grandmother "numerous times." Days later, the maternal grandmother called the Department to report that the child was staying with father's friend.

Father told the social worker he did not know he had to *stay* in his mother's house *every night*. He leaves the baby with his sister when he has to work, and sometimes Eli stayed there overnight. Father also admitted staying at a motel with the baby the prior week. He has a medical marijuana card but denied using other illicit drugs. He admitted to having been arrested for domestic violence against mother.

As father was intoxicated while Eli was in his care, failed to comply with the court's order to reside with his mother, and admitted to current marijuana use, the social

3

worker categorized the baby as being at "very high" risk of future neglect, caretaker absence, and incapacity. The Department recommended that the child be placed with the paternal aunt.

3. *The April 3, 2013 ex parte application, the last minute information for the court dated April 14, 2013, and the request to file a first amended petition*

On April 3, 2013, three weeks before the scheduled adjudication hearing, the Department filed a motion to modify (§ 385) the existing order releasing Eli to father. The Department explained that father had violated that court order because he and Eli had been staying with relatives and friends and not with the paternal grandmother who had been on vacation since March 27, 2013. The juvenile court granted the Department's section 385 motion, re-detained Eli, and placed him in the custody of the Department. The Department placed Eli in a foster home.

The Department indicated it planned to file an amended petition to name father. On April 10, 2013, the juvenile court granted the Department permission to file the amended petition "FORTHWITH, PRIOR TO 4/24/13." (Capitalization in original.)

In its last minute information for the court, the Department listed its safety concerns about father: he was increasingly argumentative at the hospital and "out of control." Security was called but father left the hospital instead. Father has no stability in his life, and no stable residence, and has not demonstrated an ability to care for Eli. Eli attends a high-risk medical clinic and father had not demonstrated he would be stable enough to arrange for the baby's attendance, let alone provide for the baby's general needs. Father argues with mother. The paternal grandmother reports that father is her eldest child and has never been stable. He was frequently in trouble in school, was arrested as a youth for drug use, and has yet to care for himself.

4. *The jurisdiction report and first amended petition dated April 24, 2013*

The Department's jurisdiction report repeated all of the information in the April 3, 2013 detention report, and contained accounts of interviews with father and mother.

On April 24, 2013, the Department attempted to file its first amended petition to add allegations concerning father. The amended petition alleged domestic violence between mother and father (§ 300, subds. (a) & (b)), father's alcohol and marijuana use in the child's presence, his failure to provide the child with stable housing, and failure to comply with the court order to reside at the paternal grandmother's house (§ 300, subd. (b)). The juvenile court refused to allow the filing of the amended petition because it was tardy. The court did not believe the social worker was "misinform[ed]" about the due date. However, the court stated it had read the reports and found that all the information provided in the first amended petition was already contained in those reports. The court also reviewed the section 385 motion attached to the April 3rd report, the detention reports of April 3 and March 13, 2013, and the addendum report of March 13, 2013.

Proceeding on the original petition, the juvenile court sustained it under section 300, subdivision (j) based on mother's conduct only. The court requested the Department obtain a copy of the Glendale police report for the disposition hearing.

5. *The last minute information and disposition report dated June 6, 2013*

The Department complied with the court's request to assess Eli's placement and provide a copy of the Glendale police report. On June 6, 2013, the parties convened for the contested disposition hearing. The juvenile court stated it had read and considered the jurisdiction and disposition report and attachments dated April 24, the ex parte application, order, detention report of April 3, and the last minute information of June 6, 2013. There was no objection to these documents. Father's attorney declined the court's invitation to present witnesses or documents. The Department requested that the court order reunification services for father. Recognizing father appeared to be nonoffending because the first amended petition was not filed, the Department argued that the court had broad discretion to make orders that are appropriate to address the risks, and recited the evidence in the record about father's conduct. Through his attorney, father requested the child be returned to his custody because he was nonoffending and disputed specific facts the Department raised concerning father.

At the close of the hearing, the court found by clear and convincing evidence that Eli should be removed from his parents' custody and control and placed with the Department. The court ordered reunification services for father. Father's appeal and the Department's appeal followed.

## CONTENTION

Father contends that the juvenile court unconstitutionally removed Eli from his custody. The Department contends the court erred in refusing to allow the filing of the first amended petition.

## DISCUSSION

### I. *Father's Appeal*

Father believes his due process rights were violated by the juvenile court's order removing Eli from his custody (§ 361, subd. (c)) at the June 6, 2013 disposition hearing because he was a nonoffending, presumed father who had not received the safeguards of a jurisdiction hearing. Father does not challenge the sufficiency of the evidence to support the juvenile court's removal order. Instead, he argues this case "present[s] a *purely legal question* whether a juvenile court may remove custody at disposition from a presumed and custodial father" when that parent is nonoffending. (Italics added.)

"The fundamental right to the care and custody of one's child is protected by [the] Constitution and statute[s]." (*In re Henry V*. (2004) 119 Cal.App.4th 522, 525, citing § 361, subd. (c).) " '*Santosky* [*v. Kramer* (1982) 455 U.S. 745] establishes minimal due process requirements in the context of state dependency proceedings. "Before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by at least clear and convincing evidence." ' (*Id*. at pp. 747-748.)" (*In re P.A*. (2007) 155 Cal.App.4th 1197, 1211.)

"California's dependency system comports with *Santosky*'s requirements . . . ." (*In re Gladys L.* (2006) 141 Cal.App.4th 845, 848.) For example, to protect the parents' constitutional interest in assuming physical custody of their children, the juvenile court may not remove children from the parents "in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or

6

physical or emotional well-being of the child.' " (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 697.)

This standard of proof applies to both offending and nonoffending parents. A child may be constitutionally removed from a *nonoffending* parent -- a parent who has not been the subject of any allegations in the section 300 petition -- in order to protect the child's physical safety and emotional well-being, provided the juvenile court makes the predicate finding of detriment by clear and convincing evidence. (§§ 361, subd. (c) & 361.2, subd. (a);[2] *In re P.A.*, *supra*, 155 Cal.App.4th at p. 1212; see *In re Isayah C.*, *supra*, 118 Cal.App.4th at p. 697; accord, *In re Z.K.*, *supra*, 201 Cal.App.4th at p. 70.)

Once it declares a child a dependent, the juvenile court must follow section 361, subdivision (c) to remove that child from offending and nonoffending parents. That statute reads: "A dependent child may not be taken from the physical custody of his or her parents or guardian or guardians with whom the child resides at the time the petition was initiated, unless the juvenile court finds clear and convincing evidence of any of the following circumstances listed in paragraphs (1) to (5), inclusive . . . : [¶] (1) There is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c) & (c)(1).) "The high standard of proof by which this finding must be made is an essential aspect of the presumptive, constitutional right of parents to care for their children" (*In re Henry V.*, *supra*, 119 Cal.App.4th at p. 529.) "Due process requires the

---

[2]     Section 361.2 governs the procedures the juvenile court must follow to place dependent children after removing them from a parent under section 361. (*In re Z.K.* (2011) 201 Cal.App.4th 51, 70.) Subdivision (a) of section 361.2 reads: "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

findings underlying the initial removal order to be based on clear and convincing evidence. [Citations.]" (*Id.* at p. 530.)

Here, the juvenile court made the necessary finding by clear and convincing evidence. Father does not challenge the factual basis for that finding.

Instead, father contends that the dispositional order was "structural" error because he was denied the right to "defend against the new allegations, including conferring with his lawyer, contacting witnesses, obtaining documents, preparing for examination and cross-examination . . . to address the specific allegations he faces." Father is wrong.

At the June 6, 2013 disposition hearing, the juvenile court stated it had read and considered the April 24, 2013 jurisdiction report, the April 3, 2013 ex parte application and detention report, and the June 6, 2013 last minute information for the court with the Glendale Police Department report attached. Asked whether he had *any* objections, father through his appointed attorney, responded "No." Father's attorney also declined the court's invitation to call witnesses or present evidence, and then rebutted the Department's facts of detriment during argument.[3] Therefore, father was given ample opportunity to defend his position at the disposition hearing.

Father also contends that he was denied due process because "disposition hearings, unlike jurisdiction hearings, allow [the] wholesale admission of hearsay." Actually, hearsay evidence is admissible at both the jurisdiction and disposition hearings (§ 355, subd. (b) ["A social study prepared by the petitioning agency, and hearsay evidence contained in it, is admissible and constitutes competent evidence upon which a finding of jurisdiction pursuant to Section 300 may be based . . ."]; *In re Madison T.* (2013) 213 Cal.App.4th 1506, 1509 [any evidence including hearsay is admissible at disposition phase]). Father's due process rights were protected at the disposition hearing, irrespective of the admissibility of hearsay, because the juvenile court could not remove

---

[3] Father makes no claim that the Department's status review reports were not made available to him in a timely fashion, and so his reliance on *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535 (failure to provide parent with status report at least 10 days before § 366.21 hearing is structural error) is unavailing.

Eli without first finding detriment by clear and convincing evidence if the child were to remain in father's custody. (*In re Henry V.*, *supra*, 119 Cal.App.4th at pp. 525 & 529; § 361, subd. (c).) There was no error.

## II. *The Department's Appeal*

The Department contends that the juvenile court erred in denying it permission to file the first amended petition. As the Department acknowledges, the court was "frustrated" by the Department's failure to comply with its specific order to file the amended petition "PRIOR TO" April 24, 2013.

"The judge of the juvenile court *shall control all proceedings during the hearings . . . .*" (§ 350, subd. (a)(1), italics added.) The court here was understandably frustrated by the Department's tardiness. Had the court allowed the late filing of the first amended petition, which was the first document to contain allegations naming father, father would have been justified in moving to continue the jurisdiction hearing to enable him to prepare a response, further delaying the disposition of the short dependency of an infant. (§ 361.5, subd. (a)(1)(B) [six months of court-ordered services for children who are younger than three years old at initial removal].) Meanwhile, as the court observed, the Department already had all of the facts that formed the basis for the allegations in the amended petition and so there was no justification for delaying the filing of the new petition for two weeks. The court specifically disbelieved the Department's excuse that it was misinformed.

The Department emphasizes the juvenile court's obligation to "maxim[ize] safety and protection for children" (§ 300.2), and the goal of "expeditious and effective ascertainment of the jurisdictional facts and the ascertainment of all information relative to the present condition and future welfare of the person upon whose behalf the petition is brought." (§ 350, subd. (a)(1).) While we agree wholeheartedly with the objective of these statutes, the juvenile court's order fell squarely within their ambit. When rejecting the first amended petition, the court noted that all of the facts underpinning the allegations against father were contained in the documents already in the record, namely the March 13 and April 3 detention reports, the April 3 ex parte application, and the

April 14 last minute information, and the April 24, jurisdiction report.  There was no error here.

DISPOSITION

The orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ALDRICH, J.


We concur:



CROSKEY, Acting P. J.



KITCHING, J.


10