Filed 4/3/15  In re Quinn V. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re QUINN V., a Person Coming Under the Juvenile Court Law. | B256886 |
| | (Los Angeles County Super. Ct. No. DK02283) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| RAFAEL C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Julie Blackshaw, Judge.  Affirmed.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, Dawyn R. Harrison, Tracey Dodds, Office of County Counsel for Plaintiff and Respondent.

_____

## INTRODUCTION

Father Rafael C. appeals from the juvenile court's dispositional order requiring Father to participate in a 52-week domestic violence program, arguing that the order is not supported by substantial evidence. We affirm because there was substantial evidence of Father's history of domestic violence and controlling behavior toward Mother, and the court has broad discretion to fashion a dispositional order that would best serve and protect the child from this violent behavior.

## FACTS AND PROCEDURAL BACKGROUND

At five months into her pregnancy and while incarcerated, Mother discovered that she was pregnant with Quinn V. Mother was cohabitating and in a relationship with Father at this time. Following her release from custody, she informed Father of her pregnancy, and Father forced her to move out two days later. Quinn, who was born with positive toxicology results for opiates, became a juvenile dependent shortly after her birth when the court sustained multiple counts of abuse and neglect based on both parents' substance abuse and Father's history of domestic violence toward Mother.

With regard to domestic violence, Mother told Department of Children and Family Services (DCFS) that Father had engaged in violent behavior many times during their relationship. In July 2012, about two months after Mother and Father moved in together, police investigated a call regarding domestic violence at their residence. Mother told the police that Father had accused her of stealing his checkbook, became angry, grabbed her by both of her arms, and threw her across the bed. Although she sustained no visible injuries, Mother reported that Father hurt her arm.

Another time in 2012, Father became angry because he could not " 'score' " drugs and began yelling at Mother to pick up dog feces outside in the yard. Father then sat on Mother's chest and began punching her in the face. Father stopped his attack when Father's mother, who also occupied the home, came into the bedroom and asked him to stop.

2

In 2013, two days after Mother informed Father that she was pregnant, Father accused Mother of doing drugs. He then threw a spoon at Mother, and grabbed and pushed Mother out of the house without allowing Mother to obtain her phone, clothes, or any of her belongings.

Outside of the domestic violence, Father has been controlling of Mother. Father accused Mother of cheating on him and often became angry with Mother when she would leave the house. Father also poisoned Mother's cat and threatened to kill Mother's dog if Father was unable to find Mother. Following their breakup, Father told Mother that he auctioned off her belongings that were in their shared storage unit, despite Mother sending Father money to pay rent for the unit.

Based on DCFS's report of this information to the court, the court sustained the Welfare and Institutions Code[1] section 300 petition based on Father's domestic violence and controlling behavior, and other grounds in February 2014. The court found true DCFS's allegation that Mother and Father "have a history of engaging in violent altercations. On a prior occasion in 2013, [Father] struck [Mother] while [Mother] was pregnant with the child. On 07/12/12, [Father] threw [Mother] across the bedroom, inflicting pain to [Mother]'s arm. [Father] has engaged in a pattern of controlling behavior toward [Mother]. The violent and/or controlling conduct by [Father] against [Mother] endangers the child's physical and emotional health and safety, creates a detrimental home environment, and places the child at risk of physical and emotional harm, damage, and danger." Father did not appeal the court's jurisdictional findings.

In May 2014, the court made dispositional orders, which required Father to attend a 52-week domestic violence group counseling program for perpetrators. Father solely appeals the court's order to the extent it requires him to attend this program.

---

[1]     All subsequent statutory references are to the Welfare and Institutions Code.

## DISCUSSION

Father asserts that the court's dispositional order directing him to participate in a domestic violence program was not supported by substantial evidence. " 'The juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion. [Citations.] The court's determination in this regard will not be reversed absent a clear abuse of discretion.' [Citation.]" (*In re Corrine W.* (2009) 45 Cal.4th 522, 532; *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006–1007.) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) Where substantial evidence supports the order, there is no abuse of discretion. (*In re Daniel C. H.* (1990) 220 Cal.App.3d 814, 839.)

Under section 362, "[t]he juvenile court may direct any reasonable orders to the parents or guardians of the child who is the subject of any [dependency] proceedings ... as the court deems necessary and proper to carry out this section," including orders "to participate in a counseling or education program." (§ 362, subd. (d).) "The program in which a parent or guardian is required to participate shall be designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (*Ibid.*)

Here, the court found that Quinn was a child described by section 300 based, in part, on Father's history of domestic violence. Mother reported to DCFS multiple incidents of domestic violence, which included (1) Father grabbing and throwing Mother across the bed in 2012, which was corroborated by a police report, (2) Father sitting on Mother's chest and punching her in the face in 2012, and (3) Father throwing a spoon at Mother and pushing her out of the house in 2013. Mother also described to DCFS how Father killed her cat with rat poison and threatened her dog's life. Moreover, Father placed Quinn at risk when he assaulted Mother in 2013 when she was pregnant. The 52-week domestic violence group counseling program for perpetrators clearly sought to eliminate the threat of harm to Quinn caused by Father's domestic violence. We conclude

4

that the court did not abuse its discretion as the order was supported by the substantial evidence listed above.

Likening his case to *In re Sergio C.* (1999) 70 Cal.App.4th 957 (*Sergio C.*), Father asserts that the court lacked a factual basis for the order because the evidence relied on by the court consisted of "the unsworn and unconfirmed statements of [M]other contained in the social worker's reports." In *Sergio C.*, the court found insufficient evidence to justify a drug testing dispositional order where the father denied drug use and the only evidence of such was the unsworn and unconfirmed allegation of the mother, "an admitted drug addict who had abandoned her children." (*Id.* at p. 958.) The court reversed the drug-test order and remanded to the dependency court with directions to order a further investigation to determine whether drug testing was necessary. (*Id.* at p. 960.)

*Sergio C.* is inapposite because in this case, the jurisdictional finding that Father had a history of domestic violence placing Quinn at risk was uncontested. Similarly, in *In re Madison T.* (2013) 213 Cal.App.4th 1506, 1507-1509, the mother appealed a dispositional order removing her child from her custody, but she did not appeal the jurisdictional finding. There, the court held that "the uncontested jurisdictional findings provide substantial evidence that it was necessary to remove [the child] from [the mother]'s custody." (*Id.* at p. 1510.) Likewise here, the court's uncontested jurisdictional finding established the very basis for the court's order requiring counseling. The court found that Father had engaged in domestic violence multiple times toward Mother, and that Father's violent and controlling behavior endangered and threatened Quinn's physical and emotional health and safety. These uncontested findings are substantial evidence supporting the court's order for Father to attend domestic violence counseling.

The court did not abuse its ample discretion in ordering Father to attend counseling as it addresses the adjudicated and undisputed abuse. (See *Sergio C., supra,* 70 Cal.App.4th at p. 960 ["[T]he trial court has broad discretion to make virtually any order deemed necessary for the well-being of the child."].) We therefore affirm the dispositional order requiring Father to engage in a 52-week domestic violence group counseling program.

## DISPOSITION

The dispositional order is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KITCHING, J.

We concur:

EDMON, P. J.

ALDRICH, J.