Filed 3/24/15  In re Tianna A. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re TIANNA A. et al., Persons Coming Under the Juvenile Court Law. | B253181 |
| | (Los Angeles County Super. Ct. No. CK60595) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| TIMOTHY A., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Honorable Julie F. Blackshaw, Judge.  Reversed.

Grace Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, for Respondent Minor Tianna A.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

Timothy A. (father) appeals from a disposition order under Welfare and Institutions Code[1] section 361, subdivision (c), removing his daughter, Tianna A., and son, Timmy A., from his physical custody. Father contends the juvenile court violated his right to due process by denying him the opportunity to present evidence and argument concerning physical custody at the disposition phase of the hearing. We agree that the manner in which the court conducted the combined jurisdiction and disposition hearing in this case resulted in a denial of fundamental due process that defies review for harmless error. Accordingly, we will reverse the order and remand the matter for a contested disposition hearing.

## FACTS AND PROCEDURAL BACKGROUND

On June 6, 2013, the Los Angeles County Department of Children and Family Services (the Department) filed a dependency petition alleging, among other things, that father had physically abused 15-year-old Tianna and 10-year-old Timmy by disciplining the children with a belt on numerous occasions. The juvenile court found the Department established a prima facie case for detaining the children and ordered them placed in the home of their paternal aunt until there could be a full hearing to determine jurisdiction and disposition.

In advance of the hearing, the Department interviewed father, Tianna, Timmy and the paternal aunt. Father denied the physical abuse allegations. He maintained that he used "logical discipline techniques" with the children, which included taking away television, computer and telephone privileges. Though he admitted to physically disciplining Timmy twice, including once with a belt, he denied ever inflicting bruises or welts on the children.

---

[1]     All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

2

Tianna reported father frequently hit her with a belt when he was angry, sometimes as often as five times a week. She claimed he hit her all over, leaving "red strips" on her body. There were times when Tianna did not know why father hit her.

Timmy told the dependency investigator that he never witnessed father hit Tianna, nor had Tianna told him about being hit. Timmy said father yelled at him and spanked him with an open hand, but he denied ever being disciplined with a belt.

The paternal aunt reported that father was "very manipulative" and that Timmy would lie for him. She had never seen father hit the children, but said she had seen him hit the children's mother. She reported father had "a mean streak in him and he's very violent." She said Timmy told her that father hit him with a belt, and he was probably lying to protect father.

In its social study and family assessment, the Department reported the children were safely detained in the paternal aunt's home and that it would be "premature" to return them to father's custody. Though father had been "forthcoming" about his family's history, the Department maintained that he "does not appear to understand that his use of physical discipline . . . has affected his children emotionally." The Department recommended the children remain detained in the paternal aunt's home and that father receive six months of family reunification services, including "counseling to address anger management and other issues that led to the children's detainment."

On October 30 and 31, 2013, the juvenile court held the combined jurisdiction and disposition hearing. At the beginning of the hearing, father's counsel sought clarification as to whether the court would be "bifurcating issues of jurisdiction and disposition." The court did not provide the requested clarification, but instead directed counsel to state whether she objected to the court receiving the Department's reports into evidence.

Father's counsel called the social worker who contributed to the Department's jurisdiction and disposition report as the first witness. Before examining the social worker, counsel renewed her request for clarification as to whether the court was "bifurcating issues of jurisdiction." When the court again did not respond to the inquiry, counsel explained that she needed to know whether her examination should cover both

3

jurisdiction and disposition issues. The court responded, "Just do jurisdiction right now." Thereafter, counsel examined the social worker, father, Tianna and Timmy concerning the dependency petition's jurisdictional allegations, including the allegation that father frequently physically disciplined the children. At the close of evidence, all counsel presented summation arguments that focused exclusively on the jurisdictional allegations.

After sustaining most of the jurisdictional allegations and declaring the children dependents, the court asked, "should we proceed now to disposition?" Father's counsel responded that father was "contesting disposition on the issues of placement and/or visitation" and explained that this had been the reason for her inquiries about the scope of her evidentiary presentation during the jurisdictional phase. The court stated it would not permit "a second contest on disposition," observing that "certainly any of the evidence considered in the jurisdiction hearing can be used for disposition" and that "we are two minutes from 4:30." Father's counsel protested that she had limited her evidentiary presentation to the jurisdictional allegations based on the court's statements and added that the court had "not allow[ed] the opportunity to present argument at least on the issue of disposition, on dispositional issues."

After denying father's request for a continuance to conduct a contested disposition hearing, the juvenile court ordered the children removed from father's custody, with reunification services and monitored visits for father. The court also entered an order limiting father's rights to make educational decisions for the children and vesting those rights in the paternal aunt. Father filed a timely appeal from the disposition order.

**DISCUSSION**

"A section 300 dependency hearing is bifurcated to address two distinct issues. First, at the jurisdictional hearing, the court determines whether the child falls within any of the categories set forth in section 300. If so, the court may declare the minor a dependent child of the court. [Citation.] Then, at the dispositional hearing, the court must decide where the child will live while under its supervision, with the paramount concern being the child's best interest." (*In re Corey A*. (1991) 227 Cal.App.3d 339, 345-346 (*Corey A.*).)

4

With regard to disposition, section 361 mandates that a dependent child may not be taken from the physical custody of his or her parents, unless the juvenile court finds *clear and convincing evidence* that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, *and* there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's or guardian's physical custody." (§ 361, subd. (c)(1), italics added.)

The burden of proof by clear and convincing evidence at the dispositional phase is substantially greater than the preponderance standard employed at the jurisdictional phase. (*In re Henry V.* (2004) 119 Cal.App.4th 522, 528.) This elevated burden "reflects the Legislature's recognition of the rights of parents to the care, custody and management of their children, and further reflects an effort to keep children in their homes where it is safe to do so." (*In re Hailey T.* (2012) 212 Cal.App.4th 139, 146.) "By requiring clear and convincing evidence of the risk of substantial harm to the child if returned home and the lack of reasonable means short of removal to protect the child's safety, section 361, subdivision (c) demonstrates the 'bias of the controlling statute is on family preservation, *not* removal.' " (*Ibid.*)

The bifurcated procedure for determining jurisdiction and disposition is codified in section 358, subdivision (a), which directs: "After finding that a child is a person described in Section 300, the court *shall hear evidence* on the question of the proper disposition to be made of the child." (Italics added.) Section 358, subdivision (b) specifies that "[b]efore determining the appropriate disposition, the court shall receive in evidence the social study of the child made by the social worker, any study or evaluation made by a child advocate appointed by the court, and other relevant and material evidence as may be offered . . . ." Due process demands, among other things, that parents have the opportunity to examine persons whose evidence is compiled within a social study received in evidence on the question of disposition. (See *Corey A., supra,* 227 Cal.App.3d at pp. 346, 348.)

5

In the instant case, father contends the manner in which the juvenile court conducted the bifurcated jurisdiction and disposition hearing denied him fundamental due process. Specifically, father maintains the court erred by instructing his counsel to limit her evidentiary presentation to the question of jurisdiction in the first phase of the hearing; then, after adjudicating the children dependents, refusing to allow counsel to present evidence and argument concerning physical custody before ruling on disposition. Father insists the denial of due process in this instance constituted structural error, requiring per se reversal of the disposition order.

The concept of structural error has its origins in *Arizona v. Fulminante* (1991) 499 U.S. 279 (*Fulminante*), a criminal case involving the erroneous admission of a defendant's coerced confession. The United States Supreme Court in that case described certain constitutional errors called " 'trial errors' " that "occur[] during the presentation of the case to the jury" and the effect of which can "be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt." (*Id.* at pp. 307-308.) The court distinguished trial errors from other, less common constitutional errors that are "structural defect[s] affecting the framework within which the trial proceeds" so that they "defy analysis by 'harmless-error' standards." (*Id.* at pp. 309-310; see *In re James F.* (2008) 42 Cal.4th 901, 914 (*James F.*).) Structural defects require automatic reversal of a criminal conviction and typically involve basic protections without which " 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . .' " (*Fulminante,* at p. 310.) Such errors include total deprivation of the right to counsel, denial of the right of self-representation, trial before a judge who is not impartial, unlawful exclusion of members of the defendant's race from a grand jury, and denial of the right to a public trial. (*Ibid.*) In *Fulminante*, the high court concluded the admission of the defendant's coerced confession was a trial error because its effect could be assessed alongside the remainder of the evidence against the defendant to determine whether admission of the confession was harmless beyond a reasonable doubt. (*Ibid.*)

6

In *James F.*, our Supreme Court considered whether the juvenile court's error in the procedure used to appoint a guardian ad litem for the father constituted structural error, requiring automatic reversal of an order terminating the father's parental rights, or instead was trial error subject to harmless error review. (*James F., supra,* 42 Cal.4th at p. 910.) The juvenile court in that case failed to explain to the father the capacity and powers of a guardian ad litem and there was no dispute that the procedure employed for the appointment did not satisfy due process. Nevertheless, our Supreme Court concluded that "error in the procedure used to appoint a guardian ad litem for a parent in a dependency proceeding is trial error that is amenable to harmless error analysis" because, unlike structural error, prejudice could be determined without " 'a speculative inquiry into what might have occurred in an alternate universe.' [Citation.]" (*Id.* at p. 915.) Applying harmless error analysis, the *James F.* court found the result was indisputably correct because the record conclusively established the father " 'was never ready to assume custody of [his son] due to his mental condition and his incarceration' and [the father's] brief and infrequent contacts with [his son] 'could not have created the type of bond and parent-child relationship necessary to force [the] child to forgo adoption.' " (*Id.* at p. 913.)

While finding it appropriate to use the trial-versus-structural-error framework in *James F.*, our Supreme Court noted significant differences between criminal and juvenile dependency proceedings that militate against importing the structural error doctrine "wholesale, or unthinkingly" into dependency cases. (See *James F., supra,* 42 Cal.4th at pp. 915-916.) The court observed that "[i]n a criminal prosecution, the contested issues normally involve historical facts (what precisely occurred, and where and when), whereas in a dependency proceeding the issues normally involve evaluations of the parents' present willingness and ability to provide appropriate care for the child and the existence and suitability of alternative placements." (*Id.* at p. 915.) Additionally, the court noted, "the ultimate consideration in a dependency proceeding is the welfare of the child [citation], a factor having no clear analogy in a criminal proceeding." (*Ibid.*) In view of these differences, the *James F.* court rejected that aspect of the structural error doctrine

7

that categorizes certain constitutional errors as "structural, not because they defy harmless error analysis, but because prejudice is irrelevant and reversal deemed essential to vindicate the particular constitutional right at issue." (*Id.* at p. 917.) Prejudice, the court observed, could not be deemed "irrelevant in a dependency proceeding when the welfare of the child is at issue . . . ." (*Ibid.*) Following this directive, the Courts of Appeal have rejected claims of structural error where the due process violation could be scrutinized for harmlessness. (See *In re A.D.* (2011) 196 Cal.App.4th 1319, 1324, 1327 [failure to give mother proper notice of review hearing was not structural error where mother was present and had opportunity to be heard and record showed there was "no basis on which the juvenile court could have found more services would have been in [the child's] best interests"]; *In re Sabrina H.* (2007) 149 Cal.App.4th 1403, 1419 [failure to give timely notice of intention to detain children outside mother's county of residence was harmless beyond a reasonable doubt where mother "was present [at the detention hearing] and had the opportunity to object"]; cf. *Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 557 [deeming failure to give parent adequate time to prepare for section 366.21 hearing to be structural error because prejudicial "impact of having less than the statutorily-mandated minimum time within which to (1) confer with one's lawyer, (2) contact witnesses, (3) obtain documents, (4) prepare for examination and cross-examination, and (5) hone one's arguments, is impossible for either a trial court or an appellate court to assess"].)

Mindful as we are of our Supreme Court's admonition against importing the structural error doctrine wholesale or unthinkingly into dependency cases, we must nevertheless conclude that the manner in which the juvenile court conducted the combined jurisdiction and disposition hearing in this case constituted structural error, mandating reversal of the disposition order. Beginning with the first witness—the social worker who prepared the children's social study for disposition (see § 358, subd. (b))—the court instructed father's counsel to "[j]ust do jurisdiction right now" in response to repeated inquiries about whether counsel's evidentiary presentation should cover both

jurisdiction and disposition issues.[2] Thereafter, counsel's examination of the witnesses understandably focused exclusively on the jurisdictional allegations, as did all counsels' summation arguments at the close of evidence. Following counsels' arguments, the juvenile court declared the children dependents, then proceeded to rule on disposition, without receiving any additional evidence or argument from the parties.

The court made its dispositional ruling over objections by father's counsel that father contested disposition "on the issues of placement and/or visitation." Father's counsel explained that she had limited her evidentiary presentation to the jurisdictional allegations based on the court's statements, and protested that the court had not afforded counsel the opportunity to present argument on the dispositional issues. The court nevertheless refused to permit "a second contest on disposition," observing that "certainly any of the evidence considered in the jurisdiction hearing can be used for disposition" and "we are two minutes from 4:30."

We are sympathetic to the challenges the juvenile court faces in managing a severely overburdened calendar. But the commendable goal of efficiently proceeding in dependency cases cannot be accomplished by sacrificing a parent's due process rights. (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 753.) Here, the record establishes that the juvenile court denied father his right to due process by ruling on disposition despite effectively precluding father from offering evidence or argument on the question of physical custody. Without knowing what evidence or argument father would have offered, it is impossible to assess whether the court's error in barring such evidence or argument was harmless. This is structural error. (Cf. *Fulminante* (1991) 499 U.S. at pp. 307-310; *James F., supra,* 42 Cal.4th at pp. 914-915.)

---

[2] As noted, limiting father's cross-examination of the social worker to the dependency petition's allegations, without allowing questions concerning the social study received in evidence on the question of disposition, constitutes a denial of due process. (See § 358, subd. (b); *Corey A., supra,* 227 Cal.App.3d at pp. 346, 348.)

9

The Department contends per se reversal is inappropriate because the evidence received on the jurisdictional allegations was sufficient to support a finding that returning the children to father's home would have posed a substantial danger to their physical safety.[3] For the reasons discussed above, we disagree. Moreover, even if we could say that such evidence was so overwhelming that father could not have rebutted a substantial danger finding, this still leaves the unresolved question of whether reasonable alternatives to removal existed. (See § 361, subd. (c)(1) [removal requires clear and convincing evidence of *both* a substantial danger to the physical safety of the minor *and* "no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody"].) Because father was not permitted to offer evidence or argument on this issue, we cannot say whether the Department would have met its burden to prove that no reasonable alternatives existed without engaging in " 'a speculative inquiry into what might have occurred in an alternate universe.' [Citation.]" (*James F., supra,* 42 Cal.4th at p. 915.) As we have concluded, this is structural error and mandates reversal of the disposition order.

---

[3]     In actuality, the Department does not address the due process violation directly, but instead argues the juvenile court acted within its discretion when it denied father's request to continue the disposition hearing. The Department reads father's appeal too narrowly. The issue raised by this appeal is not limited to the request for continuance; it concerns the complete denial of father's right to offer evidence and argument on the question of physical custody. The juvenile court had no discretion to deny father this right.

## DISPOSITION

The disposition order is reversed.  The case is remanded for a contested hearing on disposition.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.


We concur:



EDMON, P. J.



ADRICH, J.



11