Filed 11/25/20  In re Ar.M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re Ar.M. et al., Persons Coming Under the Juvenile Court Law. | |
| | D077621 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. Nos. J520197A-B) |
| v. | |
| A.M., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Rohanee Zapanta, Judge.  Reversed in part and remanded with directions.

William D. Caldwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Jesica N. Fellman, Deputy County Counsel, for Plaintiff and Respondent.

A.M. (Father) appeals from orders of the juvenile court declaring his daughter Ar.M. (age 15) and son Al.M. (age 13, together the children)

dependents of the court pursuant to Welfare and Institutions Code[1] section 300, subdivision (c), and placing them with E.M. (Mother). He contends that: (1) the evidence did not support the juvenile court's findings regarding jurisdiction; and (2) the juvenile court erred by placing the children with Mother without first removing them from his physical custody. Alternatively, he asserts that there is not substantial evidence to support the court's removal orders.

We affirm the jurisdictional orders but reverse the dispositional orders due to the court's failure to make findings under section 361, subdivision (c) and remand for a new disposition hearing and express findings under that statute.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The parents moved in together in 2003. Mother gave birth to Ar.M. in 2005, and Al.M. was born about two years later. The parents married in 2010 or 2011. According to Mother, Father was "always verbally abusive" and in March 2018, Father became violent, resulting in Mother and the children going to a domestic violence shelter. Divorce proceedings began that year.

In June 2019, the family court ordered that the parents share joint legal and physical custody of the children. In September 2019, the family court ordered that the children live with Father. Unfortunately, the children continued to witness ongoing conflict between the parents.

In late September 2019, Al.M. and Father got into an altercation that involved slapping and shoving. A member of the San Diego Police

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

Department's Psychiatric Emergency Response Team responded to the home after Al.M. tried to choke himself with a necklace. Al.M. said that Father had " 'triggered' " him after Father " 'bad mouth[ed]' " Mother. Al.M. was hospitalized for further evaluation. In the hospital waiting room, Mother " 'badmouth[ed]' " Father in front of Al.M. and this resulted in the parents yelling at each other. The children adamantly stated that they preferred staying with Mother.

The following day, the San Diego County Health and Human Services Agency (Agency) received a referral with allegations of emotional abuse of the children. Al.M. admitted attempting to self-harm with a necklace and said he felt that Father was mentally abusive because " 'he fills my head with things about the situation with my mom and that triggers me to get upset.' " Ar.M. informed the social worker that she does not like to stay with Father because he "badmouths" Mother. She reported that this was the second time that Al.M. had tried to harm himself, and that during the first incident, he tried to harm himself with a knife. Ar.M. also admitted self-harming by cutting herself.

The social worker spoke to Ar.M.'s pediatrician, who reported that Ar.M. suffered from anxiety and that Ar.M. cut herself " 'to make herself feel better. She is very upset being with dad.' " During one visit, the parents argued, blaming each other for Ar.M.'s "health" problems and causing Ar.M. to cry. The pediatrician stated that Ar.M. " 'needs a therapist and psychiatrist' " and that she was at " 'very high risk for suicide.' " The pediatrician also reported that Ar.M. had suffered from iron deficiency for several years and appeared to suffer from bulimia and anorexia.

On October 12, 2019, Ar.M. was admitted to the emergency room as
" 'suicidal.' " Two days later, at a child and family team meeting, Ar.M.
interrupted her parents' arguments multiple times and stated that "their
behaviors were the cause of everything." Ar.M. excused herself from the
room and was heard vomiting. On October 23, 2019, Ar.M. was again
admitted to the emergency room because she was " 'suicidal.' " On October
30, 2019, Ar.M. obtained a restraining order against Father, claiming that he
continuously berated her due to her mental health.

The Agency's investigation revealed that the family has a history of
referrals dating back to 2009 involving arguments between the parents and
allegations of general neglect, and emotional and physical abuse. Most of the
allegations were unfounded or "evaluated out" for not meeting state
requirements for intervention. On November 7, 2019, the Agency obtained
protective custody orders to detain the children. The Agency also filed
petitions alleging that the children were suffering serious emotional damage
as defined by section 300, subdivision (c) due to the parents' ongoing conflict,
including making negative statements about each other in front of the
children.

At the detention hearing, the juvenile court made a prima facie finding
on the petitions, detained the children in out-of-home care, allowed the
parents supervised visitation, and ordered the Agency to provide Father with
voluntary services. The Agency detained the children in the home of an adult
sibling with the intent to maintain this placement until the children
reunified with the parents.

In February 2020, Ar.M. was hospitalized due to self-harming and
substance abuse. The juvenile court continued the initial February 26, 2020,
trial date to the following month. Due to court closures related to the

COVID-19 pandemic, trial was again continued for several months. At the June 10, 2020, contested jurisdiction and disposition hearing, the juvenile court received the Agency's reports in evidence and heard testimony from the social worker. The court conformed the petitions to proof and made true findings on the petitions by clear and convincing evidence. Thereafter, the court placed the children with Mother, ordered family maintenance services for Mother and the children, and family enhancement services for Father, and allowed Father unsupervised visitation.

The juvenile court noted that the family was no longer in "immediate crisis" and was "moving in the right direction," with everyone participating in services, the parents no longer saying negative things about each other in the children's presence, and the children no longer being aggressive with each other. Nonetheless, the court expressed concern about the children's mental health, "[p]articularly because when they are depressed, they do become profoundly depressed and even suicidal." Father timely appealed.

II.

DISCUSSION

A. *General Legal Principles*

A parent may seek review of both the jurisdictional and dispositional findings on an appeal from the disposition order. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249.) We review the juvenile court's jurisdictional and dispositional orders for substantial evidence. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).) The burden of proof for jurisdictional findings is preponderance of the evidence; for removal, it is clear and convincing evidence. (*Cynthia D.*, at p. 248.)

In applying the substantial evidence standard of review, " ' "we draw all reasonable inferences from the evidence to support the findings and orders of

5

the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." ' " (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

B. *Substantial Evidence Supports the Jurisdictional Findings under Section 300, Subdivision (c)*

Section 300, subdivision (c) requires a showing that the child " 'is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others' and that either the parent is causing the emotional damage or the parent is not capable of providing appropriate mental health treatment.' " (*In re K.S.* (2016) 244 Cal.App.4th 327, 337.) To establish that the children came within the juvenile court's jurisdiction under section 300, subdivision (c), the Agency had to establish "the following three elements: (1) serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior or a substantial risk of severe emotional harm if jurisdiction is not assumed; (2) offending parental conduct; and (3) causation." (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379 (*Brison C.*).) Although there must be a present risk of harm to the minor, the juvenile court may consider past events to determine whether the child is presently in need of juvenile court protection. (*In re Petra B.* (1989) 216 Cal.App.3d 1163, 1169.)

The petitions alleged that each of the children had an emotional disorder due to the ongoing and pervasive conflict between the parents.

Ar.M.'s petition alleged that she has a history of anxiety, depression, and an eating disorder requiring mental health treatment, which the parents have been unable to provide. Al.M.'s petition also alleged that the parents were unable to provide for his mental health needs.

Father contends that there is not substantial evidence to support the juvenile court's jurisdictional orders under section 300, subdivision (c), citing the court's findings that the family is no longer in immediate crisis and the parents were no longer saying negative things about each other. He argues that these findings demonstrate that there is no current risk of harm to the children. He also asserts that the evidence does not support a finding that the children are currently at substantial risk of suffering serious emotional damage based on the parents' past conduct.

This family was in crisis when it came to the Agency's attention. The evidence that the parents' conduct caused serious emotional harm to the children is extensive and undisputed. Father's act of "badmouthing" Mother " 'triggered' " Al.M.'s attempt to choke himself in September 2019. The following month, Al.M. again tried to choke himself because he did not want to return to Father's care. Ar.M. was twice admitted to the emergency room as suicidal and her pediatrician considered her to be at very high risk for suicide. Ar.M. also cut herself as a "coping mechanism" and to make herself feel better. Early in these proceedings, Ar.M. astutely noted that the parents' "behaviors were the cause of everything."

Although Al.M. appeared to remain relatively stable, Ar.M. displayed disturbing behaviors throughout these proceedings. In April 2020, she exhibited violence toward Mother, and ran away from the caregiver's home and from Mother's home. During one incident, police transported Ar.M. to the hospital after she became violent toward family members. She stayed at

7

the hospital overnight, then ran away and stayed with a friend the following night.

The Agency recommended placing Ar.M. with Mother because Ar.M. refused every other placement option and the Agency was concerned that she would run away again. The Agency also recommended placing Al.M. with Mother because he felt "left out" and the children missed each other. By June 2020, Ar.M. reported feeling better and said that she understood that she needed to continue working on herself. Ar.M. was not visiting with Father and reported that she would be open to visitation "when it is time for her." Al.M. also reported that he did not want to visit Father and said that he had not seen Father since early May 2020.

While the parents have apparently developed a more appropriate way to communicate with each other since the family first came to the attention of the Agency, this change is very recent. The family has an 11-year history with the Agency that is replete with instances in which Father spoke negatively about Mother and the parents argued in front of the children, causing the children great distress. The parents have not yet demonstrated an ability to maintain effective communication over a sustained period.

By the time of the jurisdictional hearing, the children had stabilized. Nevertheless, a mere two months earlier, Ar.M. exhibited violence toward Mother, ran away from her placements, and was hospitalized after becoming violent toward family members. Ar.M. also used marijuana and nicotine, and was not yet participating in a drug treatment program. Although Ar.M. had weekly telephonic sessions with a psychiatrist, she frequently failed to connect to the session, or when she did, failed to engage with the psychiatrist. Significantly, both of the children refused to visit with Father. This evidence supports the juvenile court's implied finding that, although the children's

mental health had recently stabilized, they remained at risk and in need of juvenile court intervention.

We reject Father's argument that this case is similar to *Brison C.*, *supra*, 81 Cal.App.4th 1373. In *Brison C.* the minor was "caught in the crossfire of his parents' frustration and anger with each other." (*Id.* at p. 1376.) On appeal, the court found that the evidence did not support jurisdiction under section 300, subdivision (c) even though the parents' fighting caused the minor to experience "upset, confusion, and gastrointestinal distress" and to express "deep dislike and fear" of his father. (*Id.* at pp. 1377, 1380.) The court concluded that the evidence did not show that the minor was "seriously emotionally disturbed or that he was in substantial danger of suffering serious emotional damage," because there was no psychological testimony to establish emotional damage, the minor was healthy and was doing well in school. (*Id.* at p. 1376.) In this case, in contrast, the children have been plagued by serious mental health issues that were exacerbated by the parents' conduct, resulting in hospitalization. Thus, Father's reliance on *Brison C.* is misplaced.

In summary, the record demonstrates that the children had suffered, and continued to be at risk of suffering, serious emotional damage caused by the parents' conduct.

C. *The Matter is Remanded for a New Disposition Hearing and Express Findings Under Section 361, Subdivision (c)*

Before the juvenile court may order a child physically removed from his or her parent's custody, it must find, by clear and convincing evidence that: (1) a substantial danger exists to the well-being of the minor if the minor were returned home, and (2) there are no reasonable means to protect the minor's physical health without removing the minor from the parent's physical custody.

9

(§ 361, subd. (c)(1).)  Section 361 allows removal of a child from the parent's custody at the dispositional hearing where " 'return of the child would create a substantial risk of detriment to the child's physical *or* emotional well-being.' " (*In re H.E.* (2008) 169 Cal.App.4th 710, 720 (*H.E.*).)

Section 361, subdivision (e) requires the juvenile court to "state the facts on which the decision to remove the minor is based."  An order removing a child from the custodial parent is a prerequisite to placement with the noncustodial parent.  (§ 361.2, subd. (a).)[2]  Accordingly, the juvenile court must make findings under section 361 to support removal before placing a child with the noncustodial parent.

A "parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate.  The focus of the statute is on averting harm to the child." (*In re T.V.* (2013) 217 Cal.App.4th 126, 135-136.)  When deciding whether to remove a child, "the court may consider the parent's past conduct as well as present circumstances" (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917), and the child's best interests are paramount (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346).

Father argues that the juvenile court erred by placing the children with Mother without removing them from his physical custody, and that there is not

_____

[2]    Section 361.2 provides in pertinent part:  "(a) If a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child.  If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child.  [¶] . . . [¶] (c) The court shall make a finding, either in writing or on the record of the basis for its determination. . . ."

substantial evidence to support an implicit finding that removal of the children was necessary. The Agency agrees that the juvenile court failed to order the children's removal from Father under section 361 before placing them with Mother under section 361, subdivision (a), but claims that the record demonstrates that the juvenile court implicitly found that removal from Father's care was necessary to ensure the children's emotional well-being. In addition to arguing that we may imply a removal order, the Agency contends that we may also imply that the juvenile court applied the proper standard, i.e., finding by clear and convincing evidence that removal was necessary in making the implicit removal order. To the extent that we cannot determine whether the juvenile court applied the correct standard, the Agency asserts that the matter should be remanded to allow the trial court to articulate the standard applied.

The Agency has not cited, and we have not located, any authority stating that a reviewing court may imply a removal order under section 361, subdivision (c)(1).[3] Rather, in analogous situations where detriment findings were required to be made by clear and convincing evidence, reviewing courts have declined to imply the required finding. (See *In re Adam H.* (2019) 43 Cal.App.5th 27, 33 [remanding for a detriment determination under § 361.2, subd. (a)]; *In re*

---

[3] The cases that the Agency relies on for the proposition that we may imply the required removal orders are inapposite. (See *In re Corienna G.* (1989) 213 Cal.App.3d 73, 83 [failure to determine probability that children in protective custody would be returned to their parents' custody within six months could be implied]; *In re Kristin W.* (1990) 222 Cal.App.3d 234, 253 [adoptability finding can be implied]; *Michael U. v. Jamie B.* (1985) 39 Cal.3d 787, 792-793 [reviewing court required to assume that trial court made whatever findings necessary to sustain judgment], superseded on other grounds by statute as stated in *In re Zacharia D.* (1993) 6 Cal.4th 435, 448-449; *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1137 [addressing omissions in a statement of decision].)

*Marquis D.* (1995) 38 Cal.App.4th 1813, 1830 [same]; *In re Kevin N.* (2007) 148 Cal.App.4th 1339, 1344-1345 [remanding for a detriment determination under § 361.5, subd. (e)(1)]; *In re Venita L.* (1987) 191 Cal.App.3d 1229, 1239 [there must be an express finding of detriment under former section 366.2 (e) before a permanency plan may be adopted and remanding for such a finding], disapproved on other grounds in *In re Jasmon O.* (1994) 8 Cal.4th 398, 421, fn. 3.)

Although the failure to make the required *findings* supporting removal under section 361, subdivision (c) can be either harmless or prejudicial error depending on the circumstances (*In re Jason L.* (1990) 222 Cal.App.3d 1206, 1218), in order to affirm, we would have to conclude that the court's failure to make *removal orders* was harmless, and that its failure to make findings by clear and convincing evidence to support any implied removal order was also harmless. Where, as here, the juvenile court failed to make any of the section 361 required findings to support an implied removal order, we decline to imply a removal order.

On this record, we must remand the matter to allow the juvenile court to make express removal orders under the clear and convincing standard and state its reasons for removal. Accordingly, we do not address whether the record would or would not support a removal order. Nothing in this opinion is intended to foreclose the juvenile court from considering new evidence or changed circumstances that may have arisen during the pendency of this appeal. (See *In re Abram L.* (2013) 219 Cal.App.4th 452, 464, fn. 6.)

## DISPOSITION

The June 10, 2020, disposition orders are reversed and the matter is remanded to the juvenile court, which is directed to conduct a disposition hearing where it shall consider, under the standards set forth in section 361,

12

subdivision (c), whether the children should be removed from Father's custody. In making its determination, the juvenile court may consider the facts existing at the time of these further proceedings. The children's placement with Mother is to be maintained pending a new disposition hearing. In all other respects, the jurisdictional and dispositional findings and orders are affirmed.

AARON, J.

WE CONCUR:


BENKE, Acting P. J.


IRION, J.