Filed 12/30/25  In re A.L. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re A.L. et al., Persons Coming Under the Juvenile Court Law. | C103293 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>S.R.,<br><br>Defendant and Appellant. | (Super. Ct. No. STK-JD-DP-2024-0000441) |

S.R. (mother) appeals from orders in which the juvenile court dismissed a Welfare & Institutions Code section 300 petition as to minors M.M. and D.W. and ordered that father M. have legal and physical custody of them.  The juvenile court also ordered

1

reunification services for mother as to minors L.W. and A.L.  (Welf. & Inst. Code,
§§ 300, 361, 395.)[1]

Mother now contends (1) the juvenile court abused its discretion in denying her
request to continue the jurisdiction/disposition hearing based on new evidence that the
placement of M.M. and D.W. with father M. had not been going well; (2) denial of the
continuance violated due process; (3) the change in custody did not comply with statutory
requirements; and (4) the juvenile court abused its discretion in issuing the exit orders as
to M.M. and D.W..

Although the notice of appeal names all four minors, mother does not assert
appellate claims of error with regard to the orders pertaining to minors L.W. and A.L.
We will dismiss her appeal as to L.W. and A.L.

As for her contentions pertaining to M.M. and D.W., because the contentions are
either forfeited or lack merit, we will affirm the juvenile court's orders as to M.M. and
D.W.

BACKGROUND

Mother and the four minors came to the attention of the San Joaquin County
Human Services Agency (Agency) in September 2024 when mother and newborn A.L.
tested positive for cocaine at a hospital.  On September 22, 2024, a social worker and a
registered nurse met with mother, father L., and the maternal grandmother.  The nurse
said that because minor A.L. was healthy and mother was caring for him appropriately,
A.L. could be discharged following the social worker's assessment.  Mother and father L.
said they had been married for approximately two years.  They said three other children
lived with them but A.L. was father L.'s only child.  Mother reported attending some

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

prenatal checkups while pregnant with A.L., but she missed some appointments because she did not own a car.

Both parents denied using drugs. Mother claimed she may have come into contact with cocaine while handling plates at a baby shower. Nevertheless, she was willing to enroll in outpatient treatment services if necessary.

The social worker spoke with the other three minors, who indicated they felt safe with mother and father L. The social worker also found the family home to be acceptable and completed a safety plan in which mother and father L. would abstain from illegal substances, test for drugs through the chemical dependency counseling center (CDCC), be assessed for drug treatment, participate in the family first prevention services (FFPS) program, and permit daily check-ins until they tested negative for drugs.

On December 24, 2024, the Agency expressed concern with parents' positive drug tests, minimization of drug use, lack of compliance with the CDCC, refusal to engage in the FFPS program, and failure to be forthright with the social worker, all of which placed the minors at risk. The Agency filed a section 300 petition on behalf of all four minors alleging failure to protect based on the parents' substance abuse. (§ 300, subd. (b)) With regard to the eldest three minors, the petition further alleged a failure to provide support, given that the location of the other fathers was unknown. (§ 300, subd. (g)).

At a December 26, 2024 detention hearing, mother and father L. refused to drug test to determine if the minors could remain in the home. The juvenile court found that father L. was the presumed father of minor A.L., father M. was the presumed father of minor M.M. and the alleged father of minor D.W., and father D. was the alleged father of minor L.W. Finding there was a substantial danger to the physical and emotional health of the minors, and there were no reasonable means by which the minors' physical and emotional health could be safeguarded without removal, the juvenile court ordered the minors detained and placed outside the home pending disposition or further order of the court.

3

On January 2, 2025, pursuant to court order, minors M.M. and D.W. were placed with father M. for a 30-day visit. The Agency reported that such placement was appropriate because father M. had been part of the minors' lives, the minors had a strong bond with him, and the minors expressed their desire to live with him.

The Agency's January 13, 2025 jurisdiction/disposition report stated that during a background interview with the social worker, mother admitted using illicit substances because she had "been through a lot" following the death of her father and "overall life." But she insisted she had been clean since October 2024. Mother stated she did not think her substance abuse inhibited her ability to safely parent the minors and she was not worried about her drug use affecting her parenting. The Agency reported that, in addition to testing positive for illegal drugs, mother failed to report any cocaine use and signed up for treatment under a different last name. Nevertheless, the Agency recommended mother be provided with reunification services.

The jurisdiction/disposition report noted that when the Agency met with father M. on December 26, 2024, he was unaware of the allegations against mother. He said he took care of M.M. and D.W. every weekend. Father M. added that he was willing to provide the two minors with long term placement should reunification efforts fail. The Agency recommended that M.M. and D.W. remain in his home and that he be offered family maintenance services as to both minors.

The Agency filed a supplemental jurisdiction/disposition report on March 5, 2025, recommending that the juvenile court elevate father M. to presumed father status as to minor D.W., dismiss the petition as to M.M. and D.W., and award legal and physical custody of both minors to father M., with supervised visitation for mother. Mother's substance abuse was reportedly unresolved. She struggled to adhere to CDCC treatment guidelines and was not forthright with her treatment team. She failed to fully participate in FFPS services and notified the social worker that she and father L. would no longer be engaging in those services.

4

The day before the March 6, 2025 jurisdiction/disposition hearing, mother filed a motion for a continuance. At the hearing, mother argued she needed more time to prepare because she had just learned in the supplemental jurisdiction/disposition report that father M. sought full custody of M.M. and D.W. and wanted to change their names. Mother claimed the supplemental report erroneously indicated that she and father M. had joint custody of the minors, but a 2016 family law court minute order indicated mother had "full joint and legal custody."

Father M. and the Agency opposed mother's motion for continuance, arguing, among other things, that mother was made aware, at a hearing on January 16, 2025, that father M. was seeking dismissal as a non-offending, noncustodial parent, along with custody orders.

All three fathers submitted on jurisdiction based on the petition as amended in court. Mother did not. The juvenile court found that father M. was the presumed father of M.M. and D.W., denied mother's request to continue, adjudged M.M. and D.W. dependents of the juvenile court, dismissed the petition as to M.M. and D.W., and ordered that father M. have full legal and physical custody of them. But the Agency informed the juvenile court that jurisdiction issues regarding mother had to be resolved before the court could proceed with dismissal as to M.M. and D.W. Mother requested a hearing and the court granted her request for a brief recess to confer with her counsel. Following the recess, mother's counsel informed the juvenile court that mother would object and submit as to jurisdiction.

Regarding disposition, her counsel offered into evidence mother's February 25, 2025 negative drug test results and the service logs received from the Agency. Her counsel objected to dismissal of the petition as to M.M. and D.W., objected to changing D.W.'s name, and made a custody argument based on a previous family court order. Mother's counsel also offered the testimony of the maternal grandmother and gave closing argument on the custody and placement of the minors.

5

The juvenile court sustained the amended petition and adjudged the minors dependents of the juvenile court. It adopted the Agency's recommended findings and orders, dismissed the petition as to M.M. and D.W., and ordered legal and physical custody of them to father M. Over mother's objection, the juvenile court granted father M.'s request to change D.W.'s name.

The juvenile court proceeded with disposition as to minors L.W. and A.L. and ordered reunification services for mother.

DISCUSSION

I

Mother contends the juvenile court abused its discretion in denying her request to continue the jurisdiction/disposition hearing. She claims that while she was made aware on February 20, 2025, that father M. was seeking full custody of M.M. and D.W., the service logs she received on March 3, 2025, contained information conflicting with earlier reports that placement of the two minors with father M. had been going well, necessitating additional time for mother to prepare for the contested hearing.

Section 352, subdivision (a)(1), provides that a juvenile court may continue a hearing if it is not "contrary to the interest of the minor." "In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements." (§ 352, subd. (a)(1).) A continuance may be granted "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).) "In order to obtain a motion for a continuance of the hearing, written notice shall be filed at least two court days prior to the date set for hearing, together with affidavits or declarations detailing specific facts showing that a continuance is necessary, unless the court for good cause entertains an oral motion for continuance." (§ 352, subd. (a)(3).)

We review a juvenile court's denial of a request for continuance for an abuse of discretion. (*In re B.C.* (2011) 192 Cal.App.4th 129, 143-144.) We " 'consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.' " (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Mother's written motion for continuance was filed on March 5, 2025, just one day before the March 6, 2025 jurisdiction/disposition hearing. (See § 352, subd. (a)(3).) At the hearing, mother argued she needed additional time to prepare for the contested hearing because she had learned, in the Agency's supplemental jurisdiction/disposition report, that father M. was seeking full legal and physical custody of M.M. and D.W. and a name change for D.W. Mother's counsel argued the custody issue, along with other issues, such as speaking to the minors to ascertain their wishes with respect to placement, necessitated a continuance to give mother additional time to prepare her case. On appeal, mother notes she actually learned about the custody issue at the February 20, 2025 hearing but the conflicting information in the service logs she received on March 3, 2025, required additional time for preparation.

But mother was made aware of the custody issue in the jurisdiction/disposition report filed January 13, 2025. The issue was referenced again at the January 16, 2025 hearing when father M. informed the juvenile court that he wanted the petition dismissed as to M.M. and D.W. "with custody orders." When mother's counsel argued at that hearing that she would "like to be able to review the documents to see whether or not that's a good idea," father M.'s counsel indicated that counsel would have plenty of time to review the documentation in the four weeks before the contested jurisdiction/ disposition hearing date. As it turned out, mother's counsel had nearly double that amount of time because the jurisdiction/disposition hearing did not commence until March 6, 2025.

Mother characterized the information in the service logs attached to the jurisdiction/disposition report as "newly available evidence [that] placement with father was not going as well as had been reported by the [A]gency." We do not agree with mother's characterization of the record. Rather, the supplemental report indicated that M.M. and D.W. had "verbally expressed that they would like to live with their father" and, in conversations with the social worker, said they felt safe and comfortable at their father's home, they were doing well, they would like to remain in his care, and although they miss their mother and think about her sometimes, they "would like to remain home with their father." Mother's counsel argued that during a visit with mother on February 24, 2025, D.W. was crying and indicated he wanted to come home, but mother does not cite to, and our review has not disclosed, anything in the record to support her claim that M.M. and D.W. did not want to live with father M. The record shows the opposite. Although mother may have received the supplemental report only days before the hearing, nothing prevented her from seeking information from the minors in a timely manner prior to the hearing. Moreover, the minors were present at the March 6, 2025 hearing and available for in camera testimony.

The juvenile court did not abuse its discretion in denying mother's motion to continue the hearing.

## II

Mother next claims the denial of her request for continuance deprived her counsel of the necessary time to prepare and further develop her arguments in light of the "newly disclosed information" in the service logs, thereby depriving mother of her due process right to be heard on the issues of custody and placement of minors M.M. and D.W. Mother has forfeited this contention by failing to raise a due process claim in the juvenile court.

Despite the constitutional status of a due process claim, it may be forfeited by failure to object. (*In re A.E.* (2008) 168 Cal.App.4th 1, 4-5; *People v. Saunders* (1993)

8

5 Cal.4th 580, 589-590.) Mother was present with appointed counsel at the March 6, 2025 hearing where the juvenile court denied her request to continue the hearing. Mother's counsel made no due process objection. The failure to raise any due process challenge prevented the juvenile court from making the factual findings necessary to support such a claim on appeal. Therefore, mother has forfeited her due process claim.

In any event, mother had an opportunity to be heard regarding custody and placement of M.M. and D.W. Her counsel offered evidence, objected to dismissal of the petition as to M.M. and D.W., objected to changing D.W.'s name, made a custody argument, offered the testimony of the maternal grandmother, and gave closing argument on the custody and placement of the minors. Even if mother's due process claim had not been forfeited, it would lack merit.

III

Mother further contends that the juvenile court erred when it issued custody orders without first ordering minors M.M. and D.W. removed from her custody as required by section 361.

Section 361 provides that a dependent child shall not be taken from the physical custody of their custodial parent at the time the petition was filed unless the juvenile court finds clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

Section 361.2 establishes that, where a noncustodial parent requests custody of a minor following removal from the custodial parent pursuant to section 361, " 'the court *shall* place the child with the parent *unless* it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child' (§ 361.2, subd. (a))." (*In re Z.K.* (2011) 201 Cal.App.4th 51, 70.) If the juvenile court

9

places the child with the noncustodial parent, the court may "[o]rder that the parent become legal and physical custodian of the child." (§ 361.2, subd. (b)(1).) "The court shall then terminate its jurisdiction over the child." (*Ibid.*)

Here, the record reflects that the juvenile court issued its custody orders after first ordering M.M. and D.W. removed from mother's custody pursuant to section 361. At the December 26, 2024 detention hearing, because mother and father L. tested positive for cocaine when minor A.L. was born, then continued to test positive for cocaine and refused to engage in any services, and refused to drug test at the detention hearing, the juvenile court found "a prima facie case has been made, that [M.M. and D.W.] are persons described by [section 300], because there is a substantial danger to the physical and emotional health of the children, and there were no reasonable means by which the children's physical and emotional health may be safeguarded without removal." The juvenile court further found that the minors' continued presence in mother's home was "contrary to the children's welfare" and ordered the two minors temporarily detained and placed outside the home pending disposition or further order of the court.

Father M., the minors' noncustodial parent, requested custody of minors M.M. and D.W. The juvenile court ordered the two minors placed with father M., initially for a 30-day visit and then ultimately under father M.'s full legal and physical custody, pursuant to section 361.2, subdivisions (a) and (b)(1). Thereafter, the juvenile court properly terminated dependency jurisdiction over M.M. and D.W. (§ 361.2, subd. (b)(1).) Mother has not established error.

IV

In addition, mother argues the juvenile court abused its discretion in issuing exit orders granting father M. full legal and physical custody of M.M. and D.W.

A juvenile court has broad discretion to make custody orders when it terminates dependency jurisdiction, which we review for abuse of discretion. (§ 362.4; *In re Nicholas H.* (2003) 112 Cal.App.4th 251, 265, fn. 4; *Bridget A. v. Superior Court* (2007)

10

148 Cal.App.4th 285, 300.) The juvenile court's authority to make custody orders when terminating dependency jurisdiction includes the power to order that one parent have sole legal and physical custody of the child based on the child's best interests. (See *In re Nicholas H.*, at p. 268.)

Mother argues that giving father M. sole legal custody of M.M. and D.W. deprived her of the ability to participate in decisions relating to the minors' health, education, and welfare. This, she argues, was a drastic and unnecessary step given that she had sole legal and physical custody of the two minors for years, during which time she kept them safe and cared for them appropriately. She argues the custody order fails to consider the future challenges she will face in family court as a result of the order.

Mother has not shown that the juvenile court abused its discretion in issuing exit custody orders. "The juvenile court has broad discretion to decide what means will best serve the child's interest . . . ." (*In re Corey A.* (1991) 227 Cal.App.3d 339, 346.) Here, the record indicates that mother's substance abuse was unresolved. She struggled to adhere to treatment guidelines and was not forthright with her treatment team. She failed and ultimately refused to fully participate in FFPS services. Whereas father M. raised no concerns and had for the last several months been providing the two minors with a safe and appropriate home. After considering the evidence and argument from counsel, the juvenile court determined that it was in the two minors' best interests to remain with father M. under his sole legal and physical custody. The juvenile court did not exceed the limits of its discretion by making an arbitrary, capricious, or patently absurd determination. (See *In re M.R.* (2017) 7 Cal.App.5th 886, 902.) Nor did the juvenile court's order impose an undue burden on mother in family law court. Nothing in the court's exit orders limits family court authority under section 302, subdivision (d), to modify or terminate a juvenile court order if "the [family] court finds . . . there has been a significant change of circumstances since the juvenile court issued the order and modification of the order is in the best interest of the child." (§ 302, subd. (d).)

11

The juvenile court acted within its discretion in issuing exit orders granting father M. full legal and physical custody of minors M.M. and D.W.

DISPOSITION

The appeal as to minors L.W. and A.L. is dismissed.  As to minors M.M. and D.W., the juvenile court's orders are affirmed.


                                                                       /S/
                                                                MAURO, J.

We concur:


      /S/
ROBIE, Acting P. J.


      /S/
KRAUSE, J.